PARCHMAN *et al. v.* MOBILE & O. R. R. Co.*

(In Banc.  May 24, 1926.  Suggestion of Error Overruled Oct. 11, 1926.)

[109 So. 665.  No. 25437.]

RAILROADS.

> *Prima-facie* statute (Hemingway's Code, section 1645) is inap-
> plicable, irrespective of ordinary motive power, where railroad
> car causing injury was not at time moved by one of enumerated
> agencies.  (Affirmed by divided court.)

*Corpus Juris-Cyc References: Evidence, 23CJ, p. 68, n. 6;  Rail-
roads, 33Cyc, p. 878, n. 89;  Statutes, 36Cyc, p. 1106, n. 29;  p. 1108;
n. 46;  p. 1110, n. 54;  p. 1111, n. 71;  p. 1114, n. 96;  p. 1136, n. 26;  p.
1179, n. 16.

APPEAL from circuit court of Chickasaw county, Second
district.

Hon. T. E. Pegram, Judge.

Action by Mrs. Kate Parchman and others against the Mobile & Ohio Railroad Company. From a judgment on directed verdict for defendant, plaintiff appeals. Affirmed.

*Geo. T.* and *Chas. S. Mitchell,* for appellants.

The only material inquiry is whether or not the evidence for the plaintiffs in the case demonstrated clearly and beyond dispute the facts relative to the injury and the circumstances surrounding same so as to make the *prima-facie* statute inapplicable.

If the testimony shows the facts of the injury and circumstances attending and surrounding the injury and if this constitutes a perfect defense under the law, then, of course, the action of the court below in directing a verdict for defendant was correct. If it does not, or if it leaves it doubtful, or if it does not constitute a legal defense—that is, does not exculpate the defendant—then the action of the court below was erroneous. We submit that the testimony does not show any of the facts of the injury, but only shows that the child met his death by reason of the running cars of defendant railroad company.

We submit under the evidence produced in this case that the testimony shows only one of the attendant circumstances surrounding the injury; that is, the conduct of one of the employees whose acts could have contributed to the injury. But this is insufficient under the law as construed by this court. All of the attendant circumstances surrounding the injury must be clearly shown and beyond dispute, or else the *prima-facie* statute remains in the case and controls same. Therefore, we submit that it was incumbent upon the defendant to have produced each and every one of the employees engaged in work in these yards on the day and at the time and place in question, whose acts could have in any way con-

tributed to the injury, for the circumstances attending an injury consist of the conduct of those whose acts could have caused the injury. Until this was done, we submit, that the attendant circumstances were not shown and the court below erred in holding that they were. *A. & V. R. R. Co.* v. *Thornhill,* 63 So. 674; *Hollinshed* v. *R. R. Co.,* 55 So. 40; *Y. & M. V. R. R. Co.* v. *Landrum,* 42 So. 675; *R. R. Co.* v. *Brooks,* 38 So. 40; *R. R. Co.* v. *Robinson,* 64 So. 838; *So. R. R. Co.* v. *Hamel,* 74 So. 276; *R. R. Co.* v. *Cole,* 57 So. 556.

Under the above rulings of this court when proof of injury by a running train or car is shown, it then devolves upon the railroad company to explain the injury, show the facts and circumstances surrounding it, and these facts and circumstances when shown must be certain and not conjectural and must exculpate the defendant of liability or else the plaintiff must prevail under the statute. See, also, *R. R. Co.* v. *Knight,* 103 So. 377.

Even though the child was a trespasser, defendant was liable to him for its negligence. This negligence is presumed under the statute and until the defendant offered proof preponderating in its favor that it was free from negligence, the presumption was not met. 33 Cyc., Railroads, 773-74; and 769; *R. R. L. & P. Co.* v. *Jones,* 45 So. 180; *Ollis* v. *H. E. & W. T. R. R. Co.,* 73 S. W. 30; *Davis* v. *St. L. & S. W. R. R. Co.,* 92 S. W. 931; *St. L. & S. F. R. R. Co.* v. *Jones,* 16 A. L. R. 1048.

*Stovall & Stovall* and *Carl Fox,* for appellee.

It is undisputed that deceased was a trespasser. It is the rule established by a long line of cases in this court that a railroad company has no duty to be on the lookout for trespassers, and owes no duty to a trespasser unless and until he is discovered in a place of danger. There is the same absence of duty whether the trespasser be an adult or an infant. *Y. & M. V. R. R. Co.* v. *Smith,*

71 So. 752, 111 Miss. 471, 484; *Y. & M. V. R. R. Co.* v. *Huff,* 71 So. 757, 111 Miss. 486, 490; *N. O. M. & C. R. R. Co.* v. *Harrison,* 61 So. 655, 105 Miss. 18, 20; *I. C. R. R. Co.* v. *Ash,* 91 So. 31, 32; *M. & O. R. R. Co.* v. *Robinson,* 96 So. 749 (Miss.).

Appellant says that it was incumbent upon defendant to prove that none of its employees saw deceased, or if they did, were not negligent, and that defendant failed to prove it. They argue that the *prima-facie* statute, section 1645, Hemingway's Code, is applicable and that facts and circumstances exonerating defendant from blame were not established by the evidence.

Plaintiffs intended to establish, and we think it is too clear for argument that they did establish, that none of the employees of the defendant knew that he was between the cars or in a place of danger, and that none of them knew that he was anywhere about the coal chute until after he was injured. That being true, it was established that there never was any duty owing to deceased and there being no duty, there could not have been any breach of duty toward him, such as trespasser. *M. & O. R. Co.* v. *Robinson* (Miss.), 96 So. 749; and other cases cited hereinabove. See, also, *Birmingham Ry., Light & Power Co.* v. *Jones,* 153 Ala. 157, 45 So. 177, following the decision in *Southern Ry.* v. *Williams,* 143 Ala. 212, 38 So. 1013.

Furthermore, the *prima-facie* statute, section 1645, Hemingway's Code, does not apply in this case. The loaded car struck an empty car moving it a half car length, or twenty feet, and Dana Parchman was caught between the north bumper of this empty car and the south bumper of another empty car. The loaded car itself was moved only a short distance—the exact distance not being shown—its enertia being first overcome by a pinch bar after which it was kept in motion by men pushing it. Was the injury an "injury inflicted by the running of cars" within the meaning of the statute? These cars were not "running," within the ordinary

thought conveyed by the use of the term with respect to
locomotives and cars. One describing what was done
would say that the cars were "moved," but would never
think of speaking of them as "running" cars. The mere
shifting of position of two cars as in this case was not
the "running" of cars which the legislature naturally
had in mind when the statute was enacted.

Nor were these cars *"propelled* by the *dangerous
agency* of lever power" within the meaning of the stat-
ute. A pinch bar is a crowbar with a thickened and bev-
elled end. It is, therefore, a lever, but is it the "danger-
ous agency of lever power" within the meaning of the
statute? The legislature evidently had in mind hand-
cars used by section crews operated by men standing on
the car and working levers up and down, which cars can
be run at quite rapid rates of speed. And as the witness,
Hayward White described the movement of the loaded
car, the pinch bar was used merely to start it and it was
then kept in motion by men pushing it.

But it is immaterial whether the *prima-facie* statute
is or is not applicable to the shifting of the position of a
car as in this case. It is conceded that deceased was a
trespasser; and the facts and circumstances necessary
to the exoneration of defendant were established by coun-
sel for plaintiffs at some pains to themselves in an at-
tempt to support a theory which fell to the ground.

*Geo. T.* and *Chas. S. Mitchell,* in reply, for appellants.

We failed to anticipate the defense offered by counsel
for appellee, that the *prima-facie* statute has no appli-
cation to the case at bar, for the reason that it was not
shown that the running car that struck deceased was
propelled by the agencies of steam, gasoline, electricity
or lever power.

However, we submit that it is not necessary that this
be shown when it is shown that the injured person re-
ceived his injury at the hands of a railroad corporation

using cars, engines, etc., propelled by the above agencies, by one of its cars running on tracks. In other words, when it is shown that a person was injured by a railroad corporation using engines propelled by the agencies of steam, electricity, gas or lever power, then the statute applies and it makes no difference whether at the time the car was being moved by an engine or other locomotive power, it being sufficient if it is shown that it was running on a track.

The first part of the statute designates the corporations that shall be subject to it. It only states that corporations *using* engines, locomotives, etc., propelled by the agencies of steam, etc., shall be subject to the above statute. There is nothing in the statute that even suggests that the car causing the injury must, at the time of the injury, be moving by any kind of power. It is sufficient just so it is running or moving.

As to the second part of the above statute, we find that it says that proof of injury by the *running* of the cars, etc., shall be *prima-facie* evidence of the want of reasonable skill, care, etc. It does not say that the proof of injury by the running of the cars, at the time being propelled by the agencies of steam, gasoline, etc., shall constitute a *prima-facie* case of liability, but it says that it is sufficient if the car is "running."

All that is necessary to bring the statute into play is that the car be moving on a track and that it be owned or operated by a railroad corporation, partnership, or individuals using cars, locomotives, engines, etc., propelled by the agencies of steam, gas, electricity, etc., with the further requirement that they be running on tracks.

Argued orally by *Chas. S. Mitchell,* for appellants, and *Arthur Stovall,* for appellee.

Anderson, J., delivered the opinion of the court.

The appellants, the father, mother, brothers, and sister of Dana Parchman, brought this action in the cir-

cuit court of the Second district of Chickasaw county against appellee to recover damages claimed to have been suffered by them because of the death of the said Dana Parchman, alleged to have been caused by the negligence of appellee. At the conclusion of appellants' testimony, on motion of appellee, the testimony was excluded and a directed verdict and judgment thereupon entered for the latter, from which judgment appellants prosecute this appeal.

The declaration alleged and appellant's testimony tended to show that the deceased, a boy eleven years of age, was killed by the movement of a freight car on appellee's line of railroad in its yards at Okolona, a terminal point.

At the north end of appellee's yards in the city of Okolona, appellee maintains a coal chute for the purpose of supplying its locomotive engines with coal. The cars are moved over a coal pit, and there the coal dumped out of the cars into the coal pit and then raised to a platform of sufficient elevation to be dumped into the tenders attached to the locomotive engines. At or about the time of the death of the decedent, employees of appellee were unloading coal cars into this pit. They moved a loaded coal car over the pit to be unloaded. It was not moved by any of the agencies set out in what is known as the "prima-facie statute," section 1985, Code of 1906, Hemingway's Code, section 1645, unless it was "lever power." It was moved by hand in the following manner: The wheels of the car were pinched along by appellee's employees with crowbars. The crowbars were inserted under the wheels of the car, and the employees would bear their weight down on the handles of the crowbars, and by that power the car was moved. In moving the loaded car of coal over the coal pit, which movement was to the north, that car struck an empty car, by force of which the empty car was moved a distance of about one-half a car length, which, in turn, struck another car. Immediately after the car of coal had been spotted over the coal pit,

the deceased was discovered near the track where the movement of the cars had taken place, unconscious and in a dying condition.

We are of the opinion that there was sufficient evidence to go to the jury on the question of whether the death of the deceased was caused by the movement of the appellee's cars. And we are further of the opinion that if the *prima-facie* statute applied, there was sufficient evidence to go to the jury on the question of whether appellee met the burden imposed by that statute. The question left to determine, therefore, is whether or not that statute applies. The statute follows:

"In all actions against railroad corporations and all other corporations, companies, partnerships and individuals using engines, locomotives, or cars of any kind or description whatsoever, propelled by the dangerous agencies of steam, electricity, gas, gasoline or lever power, and running on tracks, for damages done to persons or property, proof of injury inflicted by the running of the engines, locomotives or cars of any such railroad corporations or such other corporation, company, partnership or individual shall be *prima-facie* evidence of the want of reasonable skill and care of such railroad corporation, or such other corporation, company, partnership or individual in reference to such injury. This section shall also apply to passengers and employees of railroad corporations and of such other corporations, companies, partnerships and individuals."

There was no negligence whatever shown on the part of the appellee. Therefore, if the *prima-facie* statute does not apply, the judgment must be affirmed. It will be observed that one of the dangerous agencies mentioned in the statute is "lever power." Is a car being operated by lever power, in the sense of the statute, when it is being pinched along with crowbars to a point for unloading? Although such power is lever power in the dictionary definition of lever power, we do not think the legislature in the adoption of the statute had any such

lever power in mind. The language of a statute must be given its ordinary and well understood meaning. When this statute was enacted, and for some time afterwards, it is a matter of common knowledge that railroads used what is known as "hand cars" for the use of their crews engaged in railroad construction and repair work, which cars were run by lever power applied by members of the crews by pressing their weight down on the handles or levers of the cars, thus furnishing the power to put the wheels of the cars in motion and to keep them in motion. These hand cars were capable of a high rate of speed and often ran over many miles of railroad track a day. Now, instead of such cars being propelled by lever power, they have, probably with few exceptions, gasoline motors, and are propelled by that power. The legislature will be presumed to have used the term "lever power" in the usual and popular sense. Furthermore, the legislature had in mind, and said in the statute in so many words, that the lever power used must be a dangerous agency. Can it be said that pinching a car along by means of a crowbar is a dangerous agency? Lever power is put in the same class as steam, electricity, gas, and gasoline are, all of which are known to be highly dangerous agencies. It is a serious question whether the legislature, under the equality clause of the Fourteenth Amendment of the federal Constitution, could classify such lever power as a dangerous agency; whether, under the authority to classify, it could denominate that as dangerous which is known to all persons not to be dangerous. By the use of the term "lever power" in the statute, the legislature had in mind the character of lever power in use among railroads for the running of cars by means of which cars are capable of being run at a high and dangerous rate of speed. The statute should not be extended beyond the purpose which it sought to accomplish. In construing a statute, courts are not always confined to the very language of the statute even though that be plain.

The real intention of the legislature must be sought and adopted in order to give effect to the statute—and this is true even though it be necessary to go beyond the letter of the statute. Absurd and unthought of results will not be attributed to the legislature. If such results follow from the plain letter of the statute, if it can be reasonably done some other construction of the statute must be found. *Kennington* v. *Hemingway,* 101 Miss. 259, 57 So. 809, 39 L. R. A. (N. S.) 541, Ann. Cas. 1914B, 392; *Pascagoula St. Ry. & Power Co.* v. *Brondum,* 96 Miss. 28, 50 So. 97. Applying these principles to the statute involved, we think it inevitably leads to the construction we have put upon it.

Does the statute apply where the engine, locomotive, or car causing the injury is propelled by some other agency than one of those set down in the statute, namely, steam, electricity, gas, gasoline, or lever power? It seems to ask the question is to answer it in the negative. A fair interpretation of the language of the statute could make it mean nothing else. To have inserted after the word "individual," in the seventh line of the statute, the words "so propelled," or "while being propelled by such dangerous agency," would have been mere tautology. And looking again to the purpose and intent of the statute, it seems that by no process of reasoning can it be worked out that the legislature intended that the statute should apply to injuries received from a car being pinched along with a crowbar. If the statute were given that construction, then, of course, it would apply to a car being pushed by hand or moved by horse power or compressed air or any other force capable of moving a car. Then we would have the novel situation of the statute applying to the movement of all cars of railroads regardless of the motive power, while it would not apply to a corporation, partnership, or individual using alone some other power than that set out in the statute. The statute had the effect of changing the common-law rule of evidence. At common law the plaintiff had to prove

negligence to make out his case. The statute, therefore, will not be extended by interpretation beyond its meaning and purpose. The rule is that a statute in derogation of the common law is to be strictly construed. Carrying out that principle, it was held in *Railroad Co.* v. *Brondum, supra,* that the statute involved before the amendment of March 6, 1912 (chapter 215, Laws of 1912), did not apply to street railroads notwithstanding a street railroad was a railroad.

*Gulfport & Mississippi Coast Traction Co.* v. *Hicks,* 116 Miss. 164, 76 So. 873, gives no support to the contrary view, but rather supports the view we have expressed. It is true in that case that the court held that a car standing still for the egress and ingress of passengers was running in the sense of this statute. That was going far enough. We do not mean to weaken that decision, however, by criticism. The court, with good reason, held that "running," the word used in the statute, was equivalent to operating; that when a passenger train stopped for the taking on and letting off of passengers, it was being operated—that it was running. The injury for which suit was brought in that case occurred to a passenger oh an electric railway as the result of an electric shock received by the plaintiff while leaning against the controller. In discussing the application of the statute involved, the court laid stress on the fact that the injury was caused by one of the dangerous agencies, mentioned in the statute, namely, electricity. Among other things the court said:

"The statute takes account of the hazard to passengers and employees from 'dangerous agencies of steam, electricity, gas, gasoline, or lever power.' "

If this provision of the statute should be construed in accordance with the view of the dissenting opinion of this case, there would be an additional reason to question whether the classification would stand under the equality clause of the Fourteenth Amendment of the Federal Constitution.

*Affirmed.*

Smith, C. J., concurs.

(Specially concurring).   I specially concur in the affirmance of this case, because the majority of the court does not agree with my personal views on the classification in the statute (section 1645, Hemingway's Code; chapter 215, Laws of 1912, amending section 1985, Code of 1906), and because the majority of the court does not agree with my view that moving the car by means of pinch bars in the manner described in Judge Anderson's opinion constitutes a use of lever power within the meaning of the statute, and because I cannot bring my mind to accept the opinion of the dissenting judges as to the meaning of this statute.   It is true that if I voted my views for reversal and joined with the dissenting judges it would result in a reversal of the judgment, but in my opinion a judge should not join in a vote of reversal unless a majority of the court agree on the rule of law applicable to and controlling the decision of the case.   A judge may rightfully vote to affirm a case, although each judge voting to affirm may vote so to do for a different reason, because the ruling of the trial judge should stand until the majority of this court disagrees with him. In order that my position may be understood and combatted on a suggestion of error, if it is wrong, I will set it forth in a concurring opinion, and a convincing suggestion of error will receive a cordial welcome.

The statute before the amendment of 1912 (section 1985, Code of 1906) provided:

"In all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of the locomotives or cars of such company shall be *prima-facie* evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury.   This section shall also apply to passengers and employees of railroad companies."

This statute was upheld by the United States supreme court as being constitutional in the case of *Mobile, J. & K. C. R. Co.* v. *Turnipseed, Adm'r,* 219 U. S. 35, 31 S. Ct. 136, 55 L. Ed. 78, 32 L. R. A. (N. S.) 226, Ann. Cas. 1912A, 463, affirming, *M., J. & K. C. R. Co.* v. *Hicks,* 91 Miss. 273, 46 So. 360, 124 Am. St. Rep. 679 in which this court upheld the classification of the statute as then written on the theory that the operation of railroads was so inherently dangerous and different from other businesses as to warrant a separate classification for them. See, also, *Easterling Lumber Co.* v. *Pierce,* 235 U. S. 380, 35 S. Ct. 135, 59 L. Ed. 279. It will be noted from the above section 1985, Code of 1906, that there was nothing said with reference to how the locomotives or cars were propelled. If the injury was inflicted by the running of locomotives or cars, then the presumption of want of reasonable skill and care arose without reference to the motive power which moved the cars and seemingly applied to every kind of movement of a car.

The legislature in 1912, by chapter 215, Hemingway's Code, section 1645, amended the statute, section 1985, Code of 1906, to read as follows:

"In all actions against railroad corporations (and all other corporations, companies, partnerships and individuals using engines, locomotives, or cars of any kind or description whatsoever, propelled by the dangerous agencies of steam, electricity, gas, gasoline or lever power, and running on tracks), for damages done to persons or property, proof of injury inflicted by the running of the engines, locomotives or cars of any such railroad corporations (or such other corporation, company, partnership or individual) shall be *prima-facie* evidence of the want of reasonable skill and care of such railroad corporation (or such other corporation, company, partnership or individual), in reference to such injury. This section shall also apply to passengers and employees of railroad corporations (and of such other corporations, companies, partnerships and individuals),"

The amendments are indicated by the parentheses (which parentheses, of course, are not in the statute itself). I think that resorting to the familiar rule of interpreting statutes by a consideration of the old law, the mischief and the remedy, that it was the intention of the legislature to apply the provisions contained in the above parentheses to other corporations than railroads as a reasonable ground of classification, and that it did not intend to change the law as it formerly stood as applied to railroads themselves. But as a majority of the court does not agree with this view, I feel that I am compelled to surrender it, and construing the statute as though it had originally stood as it now stands, I think we are bound to hold that the cars and engines must be propelled by the agencies described in the statute, and that these agencies, coupled with the running on tracks, constitute a classification, and we cannot ignore the provision of the statute, "propelled by the dangerous agencies of steam, electricity, gas, gasoline or lever power," and, as I see it, the opinion of the dissenting judges makes the presumption arise without reference to the agencies actually used, but apply these words as descriptive of the person or corporation; and this I think cannot be done without destroying the constitutionality of the statute. The statute to be constitutional, in my view of the law, requires that the classification have reference to the operation or the business being done, and may not be applied merely to persons of a particular name or a particular description.

In the case of *Southern Railway* v. *Greene,* 216 U. S. 400, 30 S. Ct. 287, 54 L. Ed. 536, 17 Ann. Cas. 1247, the supreme court of the United States dealt with this subject of classification, and in 216 U. S. at page 417, 30 S. Ct. 291, 54 L. Ed. page 541, said:

"It remains to consider the argument made on behalf of the state of Alabama, that the statute is justified as an exercise of the right of classification of the subjects of taxation, which has been held to be entirely consist-

ent with the equal protection of the laws guaranteed by the Fourteenth Amendment. It is argued that the imposition of special taxes upon foriegn corporations for the privilege of doing business within the state is sufficient to justify such different taxation, because the tax imposed is different, in that the one imposed on the domestic corporation is for the privilege of being a corporation, whereas the one on the foreign corporation is for the privilege of such corporation to do business within the state. While reasonable classification is permitted, without doing violence to the equal protection of the laws, *such classification must be based upon some real and substantial distinction, bearing a reasonable and just relation to the things in respect to which such classification is imposed;* and classification cannot be arbitrarily made without any substantial basis. Arbitrary selection, it has been said, cannot be justified by calling it classification. *Gulf, C. & S. F. R. Co.* v. *Ellis,* 165 U. S. 150, 155, 165, 17 S. Ct. 255, 41 L. Ed. 666, 668, 671; *Cotting* v. *Kansas City Stock Yards Co. (Cotting* v. *Goddard),* 183 U. S. 79, 22 S. Ct. 30, 46 L. Ed. 92; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540, 559, 22 S. Ct. 431, 46 L. Ed. 679, 689." (Italics ours.)

The *prima-facie* statute is a wholesome piece of legislation, and I am unwilling to place upon it any construction which shall endanger its constitutionality. All statutes should receive a construction, where the language permits it, that will make the statute constitutional.

I think that the operation of the car in the manner indicated in Judge ANDERSON's opinion was an operation by means of lever power within the meaning of the statute. The operation of cars on railroad tracks by means of pinch bars has existed, I think, throughout railroad history and will doubtless be continued in the future. This pinch bar is within every definition of a lever. A point of the pinch bar is placed under the wheel of the car, another point is placed upon the track, the bar having

a long handle by means of which a man of ordinary weight and strength can so multiply his man power as to move a heavily loaded freight car on a level track, and even with the necessary help such loaded car can be moved upgrade. A car may also be controlled and moved by means of manipulation of the brakes, especially coupled with the force of gravity. By releasing the brake a car may be set in motion, and the motion may be checked and suspended by application of the brake. The brake is operated on the principle of the lever as the definitions of the dictionaries and the explanation of lever operation in any treatise on physics will show. The legislature was not, in my opinion, confining its thought and attention to hand cars. In fact, the old hand cars had been practically abandoned on all of the leading railroads prior to the enactment of the statute. The legislature must be assumed to know of the current practices and conditions of industry, including the full operation of all railroads and their instrumentalities, and the statute here involved, being a remedial statute, ought to receive a liberal construction rather than a restricted one. I cannot believe that the legislature intended to make the statute a more restricted one as applied to railroads than it was under the Code of 1906.

Holden, J. (dissenting).

I disagree with the view set forth in the affirming opinion holding that the *prima-facie* statute is not applicable in the case, because "the running of the cars on tracks" which caused the injury was by a pinch bar and man power and not by the dangerous agency of steam at the time the injury was inflicted. I think the reasoning of my opposing brethren on the meaning of the legislative act is unsound, and does much toward the annulment of a plain statute.

It seems clear to me that the statute is applicable in the case, for the reason that it plainly provides that—

"In all actions against railroad corporations and all other corporations, . . . using engines, locomotives, or cars of any kind or description whatsoever, propelled by the dangerous agencies of steam, . . . or lever power, and running on tracks, for damages done to persons or property, proof of injury inflicted by the running of the . . . cars of any such railroad corporations . . . shall be *prima-facie* evidence of the want of reasonable skill and care of such railroad corporation, . . . in reference to such injury."

The statute, in my opinion, undoubtedly means to designate that class of railroad corporations, namely, those using the dangerous agency of steam, etc., as being *prima-facie* liable for injuries inflicted by the running, or moving, of cars on their tracks.

The statute does not mean that the running car which causes the injury must be propelled by steam, or other dangerous agencies mentioned, at the time it injures the person, but if the injury is caused by the running of a car of "any such railroad corporation" within the class designated by the statute, and such car is ordinarily moved by steam power, then the statute is applicable. And that is true in this case, as the car which caused the injury was the car of "such railroad corporation" using one of the dangerous agencies mentioned in the statute, to propel cars upon its tracks in the operation of its railroad, and the running of the car which caused the injury to the deceased was being run, or moved, upon its tracks in the operation of the railroad. Therefore the *prima-facie* statute is applicable in the case.

This court has held, under the *prima-facie* statute, that an injury to a passenger while the train or car was standing still was an injury received by "the running of the cars," that is, the injury was received while the train or car was being operated by the railroad corporation, even though the car was standing still and not being propelled, or moved, by any agency whatever at

the time the injury was inflicted; and that such injuries come within the *prima-facie* statute requiring he railroad company to explain how the injury occurred. *Gulfport & Mississippi Traction Co.* v. *Hicks,* 116 Miss. 164, 76 So. 873.

There being no case precisely in point as to the meaning of the statute, let us reason by analogy and see if the intention of the legislature act can be thus ascertained. Taking the statute, section 6684, Hemingway's Code, which abolishes the fellow-servant rule as to railroad employees, we find the language of that act is the same as the language of the *prima-facie* statute with reference to designating what corporations shall come within the classes named by the two statutes. For instance, the statute abolishing the fellow-servant rule applies to all corporations coming within the designated class, that is, those corporations using cars of any kind propelled by the dangerous agency of steam and running on tracks, etc., and employees of such a corporation shall have a cause of action for the negligence of fellow servants. Can it be seriously contended that such servants would have no cause of action for injuries received through the negligence of a fellow-servant unless the injury was caused by a steam-moved car or through an instrumentality being propelled or operated by one of the dangerous agencies at the time the injury was received? Surely such a view is unreasonable.

The latter statute, in simple terms, means to say that if an employee is injured by the negligence of a fellow employee while engaged in the service of a corporation which propels its locomotives and cars by the dangerous agencies of steam, etc., such injured employee may recover. The abolishment of the fellow-servant rule is meant to apply only to those corporations which are designated as being in the class using the dangerous agencies in propelling its cars running upon tracks in the operation of its railroad. The negligence of a fellow-servant employed by that class of railroad gives a right of

action to the injured servant, regardless of whether the injury was actually inflicted by the running of the cars or through any of the dangerous agencies mentioned in the statute. The sole test is whether the injury was caused by the negligence of the fellow servant. So with the *prima-facie* negligence statute, the test is: Was the injury caused by the running of cars on tracks by a corporation in the designated class?

And thus, by analogy, it seems clear to me that the *prima-facie* statute involved in this case does not mean that the injury inflicted must have been caused by the car while being propelled by steam, but the intention of the statute is that if the injury occurs by the running of a car upon the tracks of a railroad corporation within the designated class, that is, a corporation that generally, propels its cars by the dangerous agency of steam, etc., then the *prima-facie* statute is applicable.

Any other view tends to restrict the statute to those injuries that are caused by the running of the engines, or cars attached to engines, of such corporations. Surely this was not intended, because cars are moved by pinch bars, man power, and gravitation by employees upon all the railroads daily, and injuries frequently occur by the running of such cars upon the tracks; and the statute will be emaculated if it is made to read that injuries received only by the running of cars attached to locomotives come within its purview.

In *Newman Lumber Co.* v. *Irving,* 118 Miss. 59, 79 So. 2, and *Chicago, K. & W. R. Co.* v. *Pontius,* 157 U. S. 209, 15 S. Ct. 585, 39 L. Ed. 675, it is held that the classification of a railroad determines the question of liability for injuries received through the negligence of a fellow servant. And I think the holding that the fellow-servant rule is abolished as to those railroad corporations in the class named is in point by analogy as to the *prima-facie* statute involved in this case. The *prima-facie* statute does no more than put the burden of proof upon that class of corporations named, to explain how the injury

occurred which was inflicted by the running of locomotives or cars upon its tracks. Railways operated by mule power would not come within the statute, but those operated by steam power would come within it. The railroad company in the case before us comes within the statute because it is in the class designated.

McGOWEN, and COOK, JJ., concur in the above dissent.