CROUSE *v.* STATE

No. 40186          October 22, 1956          89 So. 2d 919

*Thomas H. Pearson, Stovall Lowery,* Clarksdale, for appellant.

*J. R. Griffin, Jr.*, Asst. Atty. Gen., Jackson, for appellee.

ROBERDS, P. J.

Crouse, the appellant, was convicted of stealing a Chevrolet 1½ ton truck of the value of $300.00, and seed cotton of the same value, and sentenced to the state penitentiary for two years.

The State was permitted to introduce in evidence a written statement signed and acknowledged by him admitting his guilt. He says the statement was not freely and voluntarily made; that it was obtained by duress, threats and hope of reward.

██ ██ He so testified. He was the only witness who did so testify. On the other hand, E. J. Smith, Jr., Chief Deputy Sheriff, Criminal Division, Coahoma County, Mississippi, and E. J. Ainsworth, Assistant Director, Mississippi Cattle Theft Bureau, testified that the confession was free and voluntary; that Crouse was informed by them before making the statement that he need not do so.; that if he did it would likely be used against him and that he had the right to consult an attorney if he cared to do

so. This simply presented to the trial judge a question of fact. But Crouse says, through his able counsel, that this alleged confession was made while Crouse was confined in jail, after arrest without a warrant, and that, regardless of the dispute in the testimony set out above, this illegal confinement is enough to show that the statement was made under duress. Crouse was arrested on suspicion but without a warrant, and placed in jail, November 9, 1955. The confession is dated November 11, 1955. The officers indicated they had reasonable ground for arresting Crouse from telephone messages and a letter they had received, but this was excluded. The warrant for his arrest was issued after the confession was made. The conflict in the testimony as to whether an alleged confession is free and voluntary, including the fact the confession was made while accused was under arrest and confined in jail without a warrant, are questions for decision by the trial judge on a preliminary hearing upon this question, as was done here. Mapp v. State, 143 Miss. 739, 114 So. 825; Moore v. State, 207 Miss. 140, 41 So. 2d 368; Winston v. State, 209 Miss. 799, 48 So. 2d 513; Quan v. State, 185 Miss. 513, 188 So. 568; Robinson v. State, 223 Miss. 70, 77 So. 2d 265; Lewis v. State, 222 Miss. 140, 75 So. 2d 448.

In Winston v. State, supra, we said: "However, there is one fact bearing upon this question which is not disputed and appellants say that, as a matter of law, this fact precludes the admissibility of the confessions. That fact is defendants were arrested and placed in jail and were never given a preliminary hearing, and the statements made by them, in the nature of confessions, were made when they were in custody and had not had such hearing. * * *." The court said that it was a fact that neither defendant was given a preliminary hearing, "and this fact alone, they argue, renders the confessions inadmissible". The court then quoted from Quan v. State, supra, where it was said "'* * * nearly all the authorities

are in agreement, so far as we have found, that confessions freely and voluntarily made while in custody under an unlawful arrest, are not excluded on account of the illegality of the arrest''. The Court in the Winston case observed that the legality of the detention was not before the court and then said ''We hold that the mere fact the confessions were made while appellants were in custody and before preliminary hearings were had does not render the confessions inadmissible''. Detention was a fact to be weighed by the learned trial judge along with the other testimony bearing upon whether the confession was free and voluntary. ■■■ The testimony amply supports his findings on that question.

Appellant says that the evidence fails to show that he took the truck with the intent of depriving the owner of his property. Harold Mitchell had a contract to pick the cotton of Jake Baskind. It was also Mitchell's duty under his contract to haul the cotton to a gin at Bobo, Mississippi. Mitchell had the cotton picked and loaded onto the Chevrolet truck and the trailer attached thereto described in the indictment. The quantity of cotton loaded into the truck was about a bale and a half and that loaded into the trailer was about two bales. A man by the name of Service was working for Mitchell. He drove the truck and trailer, so loaded with the cotton, to the Bobo gin, arriving at gin about seven o'clock in the evening. There were some sixty-bales of seed cotton, yet to be ginned, ahead of the Service truck; therefore, it was necessary that Service leave his truck and trailer, so loaded with seed-cotton, until the next morning. Service parked the truck, with the trailer attached thereto, on the gin yards, there to remain overnight for the cotton to be ginned when reached in due course. The truck and its load of cotton dissappeared around eight o'clock. The trailer had been detached from the truck and the trailer was left on the gin yard. Crouse had been around the gin after arrival of the truck and trailer and before the truck had disap-

peared. Breeden, who was operating the gin and who was the father-in-law of Crouse, testified that Crouse asked him to discharge one of the employees and give him the job, which Breeden refused to do. Breeden further testified that in the course of this conversation Crouse remarked "With all of this cotton it looks like somebody could take one of these trailers off and nobody would know it". Shortly after Crouse left the gin premises it was discovered the truck, so loaded with cotton, had been taken away. The cotton from this truck was found some 12 miles from the gin. It, according to the proof of the State, had been placed on a turn-row in a field of cotton being cultivated by Herschel Ross. The empty truck was found the next day parked and abandoned beside a public road in the outskirts of the small town of Alligator, in Bolivar County, Mississippi. It had in it enough gas, and was in sufficient operating condition, to be driven several miles to the home of the owner.

The confession made by Crouse detailed that on Sunday, November 6, 1955, he and Herschel Ross, a friend, agreed that if Crouse would steal some cotton that Ross would gin and sell it in his name and the two would split the purchase money fifty-fifty; that the next day, which was Monday, November 7th, he and J. B. Brasher went to the Bobo gin, and he explained to Brasher his intention to steal the cotton and that he "had a contact that would handle it for us"; that upon their arrival at the Bobo gin he, Crouse, went into the gin office and talked with Breeden, his father-in-law; that when he came back to his automobile he noticed this Mitchell truck and trailer with the seed cotton thereon; he asked Brasher to drive the truck and follow him, Crouse drove his own automobile and Brasher followed in the truck; that he led Brasher to the Ross field of cotton, where they dumped the cotton which was in the truck; Crouse then led the way back in his car to Alligator, on the outskirts of which town they parked and abandoned the truck; that the two, in

Crouse's car, then drove to Smith Cafe in Clarksdale, where they separated. The next day Crouse drove out to the Ross home to follow up the sale arrangement but Ross was ill and had not hauled the stolen cotton away and disposed of it. Crouse was arrested November 9th and placed in jail. It will be noticed that many of the statements of fact set out in the alleged confession were substantiated by other testimony — such as, for example, the fact Crouse went to the gin; that he had a conversation with Mr. Breeden; that the truck and trailer were parked at the gin; that the cotton was placed in the Ross field; that the truck was found abandoned on the outskirts of Alligator.

In Jackson v. State, 211 Miss. 828, 52 So. 2d 914, this Court approved this definition of larceny: "Larceny, as distinguished from other offenses, is the taking and carrying away from any place, at any time, of the personal property of another, without his consent, by a person not entitled to the possession thereof, feloniously, with the intent to deprive the owner of his property permanently, and to convert it to the use of the taker or of some person other than the owner". Another definition, containing substantially the same elements, is set out in Smith v. State, 214 Miss. 453, 59 So. 2d 74. See also Section 2240, Miss. Code of 1942.

The specific point argued under this contention is there is no proof justifying the jury in finding that Crouse intended to steal the truck. It is argued that he abandoned it on the outskirts of a small municipality whereas had he intended to convert it to his own use and deprive the owner thereof, he would either have retained possession of the truck or would have disposed of it for his own benefit. This, of course, was a persuasive argument which could be, and no doubt was, made to the jury. However the act of abandonment is not conclusive of the question of intent as applied to the truck. Many considerations and possibilities might have

entered into the thinking of Crouse as to what he should do with the truck—such as the condemning effect of finding the truck in his possession or evidence which others might give of his efforts to sell or dispose of the truck. Many a person, after taking property, has weighed the various ways in which he could deal with the stolen property to lessen the proof of his guilt. But if the contention carries force as applied to the truck, it has little force, if any, when applied to the cotton which was in the truck. The cotton was carried a number of miles and secretly placed in the Herschel Ross field, as per prior arrangement between Crouse and Ross, according to Crouse, for the purpose of being sold by Ross under his own name and the sale proceeds divided between Ross and Crouse. The next day Crouse goes to the home of Ross to see if he has succeeded in selling the cotton and to get his part of the sale. Ross had not sold the cotton. But this follow-up action on the part of Crouse certainly shows an intent on his part to deprive the owner of the title to the cotton and to appropriate it to himself—at least, this was a question for the jury. The value of even half of the cotton was much more than $25.00, the value required for grand larceny.

■■ ■ Crouse requested, but was refused, this instruction: ''The court instructs the jury for the defendant that if the property alleged to have been stolen and shown to have been taken openly and in the presence of third persons, then this carries with it only evidence of trespass.'' Crouse says refusal to grant this instruction was reversible error. The manner of taking, and the disposition made, of the property are facts to be considered by the jury along with other evidence bearing upon the intent of the accused. A further answer to the contention is the fact there is no proof that the truck and cotton were taken openly in the presence of other persons. The proof is that Crouse took possession of the truck and cotton thereon at night, secretly and without

the knowledge of any other person at the time. He had to unfasten the truck from the trailer. The requested instruction was based upon assumed unproven facts. It was properly refused.

■■■ Crouse asked for, but was refused, four instructions, defining the conditions under which an officer has the right to arrest a suspect for commission of a felony, and the duty of the arresting officer to inform the accused of the nature of the accusation, and to promptly take him before a committing magistrate. Crouse was arrested on November 9th and gave his statement November 11th, before a committal hearing was had. On the justification of the arrest the officer testified that he had reason to believe the crime had been committed by Crouse. It appears that belief was the result of a letter and a telephone call, or calls, the officer had received. Some of this was excluded on objection of Crouse but, on the other hand, Crouse, on cross examination of the witness, also asked if the officer had received a letter pertaining to the crime. The county attorney advised the deputy sheriff that under the circumstances he had the right to detain Crouse for investigation without a warrant. In the state of the record we cannot say whether the officer had the right to arrest Crouse for this felony, but it is not necessary for us to pass on that question. The question is not the unlawfulness of the arrest but the competency of a confession the State alleges Crouse made. Heretofore we have dealt with this confession, holding that the trial judge was justified in finding the confession was free and voluntary and that, therefore, it was competent. We will not repeat what has been said, except to say that Crouse was granted nine instructions. These instructions, carefully drawn, announced the rules as to burden of proof, presumption of innocence, and all of the elements which the State had to prove beyond a reasonable doubt before the jury could convict the

accused. ■■ ■ The four refused instructions, in our opinion, were not applicable to the issues involved and had they been granted would only have confused the issues before the jury.

■■■ E. J. Smith, Jr., testified that he made plaster cast of the tire tracks where the cotton had been dumped onto the Ross land and also of the tires on the truck used in the larceny after the truck was found near Alligator. Objection to this testimony was overruled. Crouse says that was reversible error. Here is the substance of that testimony: Smith was asked if he found any distinguishing marks in the track and tire casts. He replied "Yes, there were some * * * Yes, there were distinguishing marks — cut places in the tread — that showed up in the plaster casts. Q. By distinguishing marks, do you mean on the tires, or on the casts? A. On the tires and the cast—the same marks." This is a mixed statement of fact and opinion, but we do not think the opinion part of it rendered the testimony incompetent for the reason that the witness qualified as an expert on such matters — at least there was sufficient testimony on that subject to preclude our reversing the trial judge thereon. This witness was the chief deputy sheriff, criminal division, Coahoma County, Mississippi, in charge of all criminal investigations. He had been an employee of the Federal Bureau of Investigation. He had had special training in making casts in tire prints and preserving evidence in that respect with the FBI from February 1948 to August 1950, at which time he was transferred to the Armed Forces Security Agency of the United States Federal Government, where he remained until April 1951. This special qualification in this line of evidence distinguishes this case from Joyce v. State, 227 Miss. 854, 87 So. 2d 92, relied upon by Crouse. In the Joyce case the sheriff, who testified, did not claim he was an expert or had unusual knowl-

edge; besides, the testimony of the sheriff was purely an opinion.

Affirmed.

*Lee, Holmes, Arrington* and *Ethridge, JJ.,* Concur.