## Mapp, et al. *v.* State

No. 42854          April 13, 1964          162 So. 2d 642

*Lawrence D. Arrington,* Hattiesburg, for appellants.

*G. Garland Lyell, Jr.,* Asst. Atty. Gen., Jackson, for appellee.

Kyle, P. J.

The appellants, Willie Mapp and Bennie Mapp, were indicted, tried and convicted in the Circuit Court of Forrest County of the crime of larceny and sentenced to serve three years in the state penitentiary. From that judgment they have prosecuted this appeal.

Only two points have been assigned and argued as grounds for reversal of the judgment of the lower court: (1) That the court erred in overruling the defendants' motion for a peremptory instruction of not guilty at the conclusion of the testimony offered on behalf of the State; and (2) that the court erred in overruling the defendants' motion for a peremptory instruction of not guilty at the conclusion of all of the testimony offered on behalf of the State and the defendants.

The testimony shows that Wayne Parker, who lived in the City of Hattiesburg, was the owner of a 1950 Lincoln automobile; that during the evening of April 6, 1963, he left Purvis, where he had been at work during the day, in his Lincoln automobile to drive to Lake Shelby where his wife's family were having a birthday party for one of its members and a family picnic; that when he was about one-half mile from Lake Shelby he had a blowout of one of his right front tires, lost control of the car and ran into a fence near the roadside. He had two extra tires on the back floorboard, but neither of them would fit the metal rims of the Lincoln car. He left the disabled car on the roadside of the rural road which he was traveling and spent some time in trying to locate the owner of the fence for the purpose of informing him about the accident and making some arrangement with him to have the fence repaired. Park-

er then went to the picnic grounds near the Lake to attend the family picnic, and when the picnic crowd dispersed he went to the home of his mother-in-law in the Dixie Community to get a spare tire off of her pickup truck.

Parker testified that he and his brother-in-law, Elwood Walker, and Walker's 11-year old son then drove back in the pickup truck to the scene of the blowout near the Lake. When they arrived at the scene of the blowout they found that Parker's Lincoln car was sitting on the ground. All of the tires except the blown-out right front tire had been taken off of the car. The three metal rims and the two extra tires that were on the back floor were also missing. The back window of the car had been broken. Parker's insurance policy and other papers that were kept in the glove compartment of the car were missing. The right front tire which had blown out was still on the car. The other three wheels and tires were gone.

Parker testified that he saw another car sitting 100 or 150 yards behind his car, with the motor running and the lights burning. His Lincoln car was still in a ditch near the roadway where he had left it at the time he had the blowout. The motor would still run; so he pulled the car up about 300 yards to a point where he could get it back on the road. The other car which he had seen behind the Lincoln took off through the woods. He could not tell what kind of car it was, or who was driving it; but he and his brother-in-law followed the car in their pickup truck along a log roadway through the woods. The other car stopped when it got to a ditch, and Parker's brother-in-law, who was driving the pickup truck at that time, pulled up behind it. The two defendants, Bennie Mapp and Willie Mapp, and Bennie Lee, a youth about sixteen years of age, got out of the car. One had a ball bat, one had a lug wrench and one had a pocket knife. The three started toward

Parker and his brother-in-law. They were cursing and appeared to be very angry. Walker backed off and in an attempt to turn his pickup truck around he hit a tree on the roadside. He then tried to go forward and pass the Mapp car. But the left front door on the Mapp car was open and Walker hit it when he tried to pass, and the pickup truck came to a stop in a ditch. One of the men who had gotten out of the Mapp car broke the glass in the left door of the pickup truck with a ball bat; and Walker sustained minor injuries to his chest when the truck ran into the ditch.

Parker stated that the defendants continued their threats and held them there near the roadside about two hours. The defendants demanded that Parker and Walker agree to repair the damage to the left front door of their car; and Parker and Walker told them that somebody had taken the tires off of the Lincoln car. The defendants took a flashlight and showed Parker and Walker that the tires were not in their car. Parker and Walker finally told them that they would have the front door of their car repaired. The defendants then helped Parker and Walker get their pickup truck out of the ditch. Parker stated that he and Walker left the scene of the blowout about 11 o'clock; that they went to their home immediately and placed a telephone call for Cotton Humphrey, the constable; that Humphrey met them at the Lake a short time thereafter, and the three men went back into the woods and found the tires and other parts which had been removed from the Lincoln automobile. The first tire which they found was about 50 feet behind the Lincoln car. The second tire was out where the Mapp boys' car was sitting when Parker and Walker first drove up. The other three tires were found on the roadside close to the point where Parker and Walker had hit the ditch with the pickup truck. One fender skirt and a hubcap were found close by, and the other fender skirt was found on the other side of the road. Parker stated that he and the con-

stable then went to the home of a justice of the peace and obtained warrants for the defendants' arrest. They then went to the Mapp home, and Willie and Bennie were arrested and put in jail. None of the stolen property was found at the home. Parker valued the five tires which had been taken at $8 each. The five metal wheels were valued at $2 each, the three metal hubcaps at $1 each, and two fender skirts at $5 each.

Elwood Walker's testimony concerning the events which occurred after Walker and Parker returned to the scene of the blowout was substantially the same as that of Parker.

Frederick L. Humphrey, referred to in the record as "Cotton Humphrey", testified that he was called about 11 o'clock that night by Elwood Walker; that he went to Lake Shelby and found Walker and Parker waiting for him; that they examined the tire tracks of the Mapp car and the tracks made by the pickup truck; that they found one tire close to the (Lincoln) car; and about 100 or 200 feet down the road they found three other tires and the hubcaps. The Lincoln car was sitting on the ground, with but one tire on the front wheel, the tire that had blown out. Humphrey stated that he arrested the two defendants later that night and put them in the Forrest County jail. They had been drinking liquor, but he would not say that they were drunk when he arrested them about 3:30 A.M. at their home. They were in full possession of their faculties. Humphrey testified that the defendants admitted after they were put in jail that they had taken the tires and the other articles from the Lincoln automobile.

The appellants testified that they had been driving around during the late afternoon and evening, and had been drinking beer; that they later found some whiskey and drank some of that; and when they saw the Lincoln car sitting out there in the woods about twenty-five yards from the road, they decided to take the tires off.

Bennie Mapp was asked why they took the tires off. His answer was, "We was just drunk and just feeling mean, I guess." They jacked up the car and took the tires off and laid them by the side of the road. They found an extra tire on the back floorboard and took that. They also took the two fender skirts off and laid them down. They then drove a short distance down the road and drank two cans of beer, and about that time they saw Elwood Walker's car coming up the road. Walker drove up by the side of their car and told them that he was hunting for some tires. They told him they did not have his tires. On cross-examination the appellants stated that they did not steal the tires, wheels, fender skirts and hubcaps. They admitted that while they were on a drinking spree they removed the tires and other parts from the automobile, but stated that they did not carry away any of the tires or other parts.

It is argued on behalf of the appellants that the evidence offered on behalf of the state was insufficient to justify the jury's finding that the appellants intended to steal the tires and other articles taken from the Lincoln automobile. It is argued that the evidence clearly shows that the appellants were highly intoxicated at the time the tires were removed from the Lincoln automobile, that none of the property alleged to have been stolen was ever carried away from the wooded area where the Lincoln automobile was parked; and that the evidence as a whole failed to show a sufficient asportation or the requisite felonious intent to deprive the owner of his property.

But we think there was ample proof in the record to show that there was a sufficient asportation of the articles mentioned in the indictment to support the finding of the jury that the articles were taken and carried away feloniously, and with the felonious intent on the part of the takers, existing at the time of the taking, to steal the same.

Larceny, as distinguished from other offenses, is defined as "the taking and carrying away from any place, at any time, of the personal property of another, without his consent, by a person not entitled to the possession thereof, feloniously, with intent to deprive the owner of his property permanently, and to convert it to the use of the taker or of some other person other than the owner." 52 C.J.S., Larceny, § 1, p. 779; Jackson v. State, 211 Miss. 828, 52 So. 2d 914.

It is not necessary to constitute a sufficient asportation, that the goods be removed from the owner's premises. To remove them with the requisite felonious intent from one part of the premises to another, or from the spot or house where they were found, or even from one place to another in the same room, is a sufficient asportation. 32 Am. Jur., 905, Larceny § 19; and cases cited.

In Delk v. State, 64 Miss. 77, 1 So. 9, 60 Am. Rep. 46, the Court said: "It was not necessary that the animal stolen should have been removed from the premises of the owner. To remove him with the requisite felonious intent from one part of the premises to another, or from the spot or house where he was found, was a sufficient asportation. 2 Bish. Crim. L. §§ 794, 806; 3 Greenleaf Ev., § 154."

The jury in our opinion was not required to accept as true the statements of the defendants that they did not intend to steal the property, or deprive the owner of his possession of the property. The jury had a right to believe from the evidence that the tires and other automobile parts described in the indictment were taken and carried away by the defendants feloniously, with the intent to deprive the owner of his property permanently and to convert it to their own use, and that they abandoned the property, when the owner appeared on the scene, to avoid being caught with the property in their possession. The fact that under such

circumstances the defendants made no effort to repossess the property after the owner had left the wooded area was not conclusive of the question of intent as applied to the taking and removal of the property from the owner's automobile. Simmons v. State, 208 Miss. 523, 44 So. 2d 857; Crouse v. State, 229 Miss. 15, 89 So. 2d 919.

We find no reversible error in the record, and the judgment of the lower court is affirmed.

Affirmed.

*Ethridge, Gillespie, McElroy and Rodgers, JJ.,* concur.