# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2010-KA-00678-SCT

*JULES CORBIN*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/05/2010 |
| TRIAL JUDGE: | HON. BETTY W. SANDERS |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF INDIGENT APPEALS |
| | BY: JUSTIN TAYLOR COOK |
| | LESLIE S. LEE |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| | SCOTT STUART |
| DISTRICT ATTORNEY: | WILLIE DEWAYNE RICHARDSON |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 09/22/2011 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE WALLER, C.J., LAMAR AND PIERCE, JJ.**

**PIERCE, JUSTICE, FOR THE COURT:**

¶1.     Jules Corbin, Tammy Louis, and James Henry, Jr. were involved in an automobile wreck that left Louis dead and Henry severely injured.[1] Corbin was indicted for capital murder, aggravated assault, and felony fleeing the scene of an accident.  However, he was convicted by a jury in Washington County Circuit Court of the lesser-included offense of

---

[1] Henry later died from the injuries he sustained in the wreck.  His death occurred before trial.

murder, as well as aggravated assault and felony fleeing the scene. Corbin was sentenced to life imprisonment for murder, ten years for aggravated assault, and three years for felony fleeing. Aggrieved, Corbin appeals, and claims, among other things, that his Sixth-Amendment right to confrontation was violated. We agree and find that the error was not harmless as to the charges of murder and aggravated assault, but that it was harmless as to the charge of felony fleeing the scene of an accident. Thus, we reverse and remand in part, and affirm in part.

## FACTS AND PROCEEDINGS

¶2. The following facts were gleaned from the testimony and evidence presented at trial. Louis and Corbin had lived together for two years prior to the automobile wreck that occurred on August 15, 2008. On the day in question, Corbin asked Louis if he could use her son's car, a gray Mercury Grand Marquis, so he could drive to Leland, Mississippi, and get money from his mother.[2] Later that afternoon, Louis began to get ready to go to a party with her friend, Henry. Louis and Henry left the house around 8 p.m. in a green, four-door Expedition.

¶3. Louis's daughter, Shakila, had been text-messaging her mother throughout the evening, when the texts from Louis suddenly stopped around 11 p.m. The police arrived shortly thereafter and told Shakila that her mother had been killed in a car wreck. Upon arriving at the wreck scene, Shakila saw her mother's Expedition "jammed into a pole." Louis had passed away at the scene of the wreck, but Henry was taken to a local hospital.

---

[2]At trial, Louis's son and daughter testified that Corbin had borrowed the Mercury Grand Marquis, and that it belonged to Louis's son, Mario Rhodes.

Eventually, he was transferred to the Regional Medical Center ("The Med") in Memphis, Tennessee.

¶4.     Damarcus Lott and Henry House were nearby when the wreck occurred. They both testified at trial to hearing a loud crash, and then seeing a gray Marquis smashed into the rear end of a green Expedition. Both Lott and House stated that they saw a man in a Marquis get out of his car, walk to the passenger side of the Expedition, take a dark-colored object with straps "like a purse" from the vehicle,[3] and drive off. Lott testified that he had seen the man's face, and that the man was wearing a white shirt, jeans, and had "a cap on his head." House did not see the man's face, but said that the man "had a fitted cap on, white T-shirt, [and] blue jeans."

¶5.     Meanwhile, Samantha Davenport and her husband, John Haggard, were en route to pick up Haggard's paycheck at a local casino, when Corbin flagged them down. Both Davenport and her husband testified at trial. Corbin told them that his car had been stolen, and that he needed a ride. The couple refused to give Corbin a ride. Within a few minutes, Corbin said he saw his car and ran off. Haggard stated that Corbin had looked nervous, as if "he was trying to hide something." Additionally, both witnesses observed that Corbin had a dark-colored object with straps tucked under his shirt. Haggard stated that Corbin was wearing a white shirt and a cap.

---

[3] Later, a black purse with straps was discovered near a trash bin. It was determined that the purse belonged to Louis. Corbin's taking of the purse and Louis's subsequent death were grounds for the capital-murder charge. However, Corbin was convicted of murder.

¶6.    Shortly thereafter, Corbin went to the Greenville police station and reported his car stolen. Since officers had received information that Corbin had been driving one of the cars involved in the wreck, they arrested Corbin and charged him, initially, with leaving the scene of an accident and burglary. A couple of days after his arrest, Corbin waived his *Miranda* rights and spoke with Investigator Gary Castleberry about the wreck.[4] He told Castleberry that he "was involved in the accident," but that "they [Louis and Henry] caused it." Corbin further said that, once he had seen the driver of the vehicle, he had "turned around and began chasing them." Corbin never admitted to hitting the Expedition with the car that he had been driving.

¶7.    Approximately one month after the wreck, Castleberry received a phone call and learned that Henry, the driver of the green Expedition, was no longer on life support, and that he was able to speak about the wreck. Castleberry drove to Memphis, Tennessee, and recorded the following statement from Henry.

Q.    Do you recall what happened the night of the accident?

A.    Well, like I say, he pulled up on the side of us.

Q.    You say he pulled up the [sic] side of you. Who?

A.    Poo.

Q.    Poo. Do you know Poo's given name?

A.    I just call him Poo.[5]

_____

[4]*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5]At the time this statement was played for the jury, it had been established that "Poo" was Jules Corbin.

. . .

Q.     Now, what was said and what do you remember?

A.     I asked her who it was.  She said it was Poo.  And she said go ahead on.  So I went ahead on.  He got in behind us on Gloster.  He hit the car one more time.

Q.     You say he was hitting the car?

A.     Uh-huh.

Q.     He was hitting the Expedition you were in.  What was he driving?

A.     He was in Mario's car, Mercury.

Q.     Do you remember what color it was?

A.     It was gray.

. . .

Henry died  from the injuries he had sustained in the wreck approximately six months after the recorded interview.  At trial, and over a hearsay objection by defense counsel, the tape was played for the jury and admitted into evidence.

¶8.    At trial, Corbin testified in his own defense.  He stated that he had borrowed the Marquis and had gone to Leland to "take care of some business."  Corbin claimed that, when he returned to Greenville, he went to a friend's house to smoke marijuana.  Corbin said that when he went to leave the house, he couldn't find the car.  Corbin stated that he flagged down Davenport and Haggard and asked them for a ride, which they refused.  Corbin testified that he then walked to the police station and reported the car stolen. Corbin stated that he never "had a conversation" with Castleberry regarding his involvement in the wreck.

¶9. Corbin was convicted of murder, aggravated assault, and felony fleeing the scene of an accident. He was sentenced to life imprisonment for murder, ten years for aggravated assault, and three years for felony fleeing the scene of an accident. On appeal, Corbin raises five issues, the first issue being that his Sixth-Amendment right to confrontation was violated when the trial court allowed the State to play the recorded statement by Henry. Because this issue is dispositive, we decline to address the other issues raised on appeal.

**DISCUSSION**

¶10. On appeal, Corbin claims that his Sixth Amendment right to confrontation was violated by the admission of the recording of Henry's statement, in violation of *Crawford v. Washington*.[6] Corbin's trial counsel failed to make a *Crawford* objection regarding the admission of the statement, and Corbin now asks this Court to address the issue under the doctrine of plain error.[7]

¶11. "Under the doctrine of plain error, we can recognize obvious error which was not properly raised by the defendant on appeal, and which affects a defendant's 'fundamental, substantive right.'"[8] A violation of the Confrontation Clause is a violation of a "fundamental, substantive right,"[9] which seriously affects the "fairness, integrity or public reputation of

---

[6]*Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004).

[7]*Id*.

[8]*Smith v. State*, 986 So. 2d 290, 294 (Miss. 2008) (citing *Debrow v. State*, 972 So. 2d 550 (Miss. 2007)).

[9]*Id*.

6

judicial proceedings."[10]  Therefore, we will address whether the admission of the recording of Henry's statement, which implicated Corbin, violated Corbin's right to confrontation, and if so, whether such error requires reversal.[11]

### I. Whether Henry's prerecorded statement to police violated Corbin's constitutional right of confrontation under the Sixth Amendment.

¶12.    The United States Supreme Court has said:

> [There] are few subjects, perhaps, upon which this court and other courts have been more nearly unanimous than in the expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.[12]

¶13.    The Confrontation Clause of the Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."[13]  Article 3, Section 26 of the Mississippi Constitution provides an almost identical safeguard.  Thus, the admission of a testimonial statement of a witness who does not appear at trial is barred, unless that witness is unavailable, and the defendant has had a prior opportunity for cross-examination.[14]  As noted in *Crawford v. Washington*, this bar only

---

[10] *United States v. Olano*, 507 U.S. 725, 732, 113 S. Ct. 1770, 1776, 123 L. Ed. 2d 508, 518 (1993).

[11] *See Smith*, 986 So. 2d at 294.

[12] *Lee v. Ill.*, 476 U.S. 530, 540, 106 S. Ct. 2056, 90 L. Ed. 2d 514 (1986) (quoting *Pointer v. Texas*, 380 U.S. 400, 405, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965)).

[13] *Davis v. Washington*, 547 U.S. 813, 821, 126 S. Ct. 2266, 2273, 165 L. Ed. 2d 224 (2006) (citing *Crawford*, 541 U.S. at 59).

[14] *Id*.

applies to statements that are "testimonial."[15] And while the Supreme Court has declined to provide a definition of "testimonial," it has said that "'[t]estimony' . . . is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.'"[16] This necessarily includes, among others, "police interrogations" and "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."[17]

¶14.    Henry's statement to Castleberry implicating Corbin as the driver who hit the Expedition and the person responsible for the wreck certainly qualifies as testimonial under the core class of statements enumerated in *Crawford*.[18]   The statement was such that an "objective witness" would reasonably believe that the statement would be available for use at a later trial.  Because Henry's statement was made for the purpose of assisting police with its investigation, the purpose was prosecutorial.  Thus, the statement was testimonial, and should have been excluded.

¶15.    Moreover, the exception prescribed in *Crawford* is barred, because Corbin did not have a prior opportunity to cross-examine Henry before his death.  Confrontation and the ability to cross-examine witnesses are fundamental elements of a fair trial.  Here, the jury

---

[15]*Crawford*, 541 U.S. at 68.

[16]*Neal v. State*, 15 So. 3d 388, 403 (citing *Crawford*, 541 U.S. at 51).

[17]*Id*. at 403-404 (citing *Crawford*, 541 U.S. at 52).

[18]*Crawford*,  541 U.S. at 51-52.

was allowed to hear incriminating evidence as to Corbin's guilt, without it being tested in the "crucible of cross-examination."[19]

¶16. Now we must determine whether this violation of Corbin's constitutional right was harmless error.[20] In ***Delaware v. Van Arsdall***, the Supreme Court explained the parameters that should be considered by an appellate court when reviewing a Confrontation-Clause violation as harmless error.

> The correct inquiry is whether, assuming the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.[21]

¶17. In order for the violation of Corbin's constitutional right to confrontation to be considered harmless, the admission must be harmless beyond a reasonable doubt.[22] Mississippi Code Section 97-3-7 provides: "[a] person is guilty of aggravated assault if he . . . (b) attempts to cause or purposely or knowingly causes bodily injury to another *with a*

---

[19]***Crawford***, 541 U.S. at 61-62.

[20]***Delaware v. Van Arsdall***, 475 U.S. 673, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986) (a violation of the Confrontation Clause is subject to "harmless error" analysis); *see also* ***Earl v. State***, 672 So. 2d 1240, 1243-44 (Miss. 1996).

[21]***Delaware v. Van Arsdall***, 475 U.S. at 684.

[22]***Id***.

*deadly weapon* or other means likely to produce death or serious bodily harm."[23]  And

Section 97-3-19 states that: "[t]he *killing* of a human being without the authority of law *by any means or in any manner* shall be murder in the following cases: [w]hen done in the commission of an act eminently dangerous to others and evincing a depraved heart, regardless of human life, although without any premeditated design to effect the death of any particular individual."[24]  Henry's recorded statement was the only piece of evidence at trial that accused Corbin of purposely or knowingly hitting the Expedition and causing the wreck. Such evidence was vitally important to prove, beyond a reasonable doubt, that Corbin purposely or knowingly had used the car as "a deadly weapon,"[25] and that he had killed a human being "without the authority of law by any means or in any manner."[26]   No other witness provided similar testimony.  And Corbin denied hitting the car and causing the wreck in his statement to Castleberry.  Thus, we cannot say that the admission of the statement was harmless beyond a reasonable doubt.

¶18.   With regard to the charge of felony fleeing the scene of an accident, the error is harmless.  Mississippi Code Section 63-3-401 requires that:

> The driver of any vehicle involved in an accident resulting in injury to or death of any person shall immediately stop such vehicle at the scene of such accident . . . but shall then forewith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of Section 63-3-405.

---

[23]Miss. Code Ann. § 97-3-7 (Rev. 2006).

[24]Miss. Code Ann. § 97-3-19 (Rev. 2006).

[25]Miss. Code Ann. § 97-3-7 (Rev. 2006).

[26]Miss. Code Ann. §  97-3-19(2)(e) (Rev. 2006).

10

Section 63-3-405 states that the driver of any vehicle involved in an accident resulting in injury or death to any person, or damage to any vehicle, shall give his name, address, and the registration number of the vehicle he is driving, among other things.[27] Section 63-3-405 also states that the driver of any vehicle involved in an accident resulting in injury shall render reasonable assistance to any person injured in such accident.[28]

¶19.    Demarcus Lott testified that he had seen Corbin get out of the Marquis, walk to the passenger side of the Expedition, "get a purse" from the vehicle, and drive off. Lott testified that he had seen the man's face, and he gave a description to police. Lott's description of Corbin was corroborated by the testimony of Davenport, Haggard, and House. Lott made an in-court identification of Corbin as the person he had witnessed leaving the scene of the wreck. House also testified that he had seen a man get out of the Marquis, walk to the passenger side of the Expedition, take a dark-colored object with straps from the vehicle, and drive off. Thus, in light of this evidence, Henry's recorded statement was circumstantial evidence that Corbin fled the scene and was cumulative to the testimony of Lott and House.

¶20.    Corbin argues that his trial counsel was ineffective for failing to object when Lott made the in-court identification. Corbin alleges that the in-court identification was based upon an "impermissibly suggestive pre-trial identification procedure." This argument has no merit, as the record is clear that Lott was never shown a picture of Corbin prior to trial. The State showed Lott a picture of Corbin at trial, but only after Lott had identified Corbin as the man he had seen on the night in question. Lott testified that he had gotten a "good

---

[27]Miss. Code Ann. § 63-3-405 (Rev. 2004).

[28]Miss. Code Ann. § 63-3-405 (Rev. 2004).

11

look" at Corbin, and that he was familiar with Corbin from seeing him around town. And his description of Corbin was corroborated by the testimony of Davenport, Haggard, and House. Accordingly, Corbin's conviction and sentence regarding this charge stand.

¶21. Lastly, we note that, in its brief, the State argues that Henry's statement was otherwise reliable, and its admission at trial should be deemed harmless error. When dealing with testimonial evidence, a finding of reliability does not create an exception to the Confrontation Clause. "[W]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation."[29] "Admitting statements deemed reliable by a judge is fundamentally at odds with the right of confrontation."[30] Thus, any notion that Henry's statement was admissible because it was reliable overlooks the undeniable fact that the Confrontation Clause is a procedural, rather than a substantive, guarantee.[31]

**CONCLUSION**

¶22. Because the admission of Henry's unconfronted statement resulted in the violation of Corbin's constitutional right to confrontation, impeding his right to a fair trial, we reverse and remand the convictions for murder and aggravated assault for a new trial consistent with

---

[29] *Crawford*, 541 U.S. at 68-69.

[30] *Id*. at 61.

[31] *Id*.

this opinion.[32] We affirm Corbin's conviction for felony fleeing the scene of an accident, as overwhelming evidence of Corbin's guilt was properly submitted to the jury.

¶23. **COUNT I: CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, REVERSED AND REMANDED. COUNT II: CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TEN (10) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, REVERSED AND REMANDED. COUNT III: CONVICTION OF FELONY LEAVING THE SCENE OF AN ACCIDENT AND SENTENCE OF THREE (3) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

**WALLER, C.J., CARLSON, P.J., RANDOLPH AND LAMAR, JJ., CONCUR. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., CHANDLER AND KING, JJ.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶24. I agree with the majority's conclusion that the trial court violated Jules Corbin's Sixth Amendment right to confrontation when the previously recorded police interview of James Henry, Jr., was admitted into evidence. As such, I agree that, with respect to Count I for murder and Count II for aggravated assault, the convictions and sentences should be reversed and remanded for a new trial. However, I respectfully disagree with the majority's conclusion that this error was harmless regarding Count III, felonious fleeing the scene of an accident; therefore, I would reverse and remand for a new trial on all charges.

¶25. Harmless errors are "constitutional errors which in the setting of a particular case are so unimportant and insignificant" they do not require the automatic reversal of a conviction.

---

[32]*HWCC-Tunica, Inc. v. Jenkins*, 907 So. 2d 941, 944 (Miss. 2005) ("[I]n order to reverse under the plain error doctrine, the reviewing court must find both error and harm.").

13

*Chapman v. California,* 386 U.S. 18, 22, 87 S. Ct. 824, 827, 17 L. Ed. 2d 705 (1967). Where a violation of the Confrontation Clause has occurred, the "testimony erroneously admitted" must be "merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury" in order to be considered harmless error. *Brown v. U.S.*, 411 U.S. 223, 231, 93 S. Ct. 1565, 1570, 36 L. Ed. 2d 208 (1973). Moreover, "before a federal constitutional error can be held harmless," this Court must find that the error was harmless beyond a reasonable doubt. *Chapman,* 386 U.S. at 24. The State is burdened with proving that the error was harmless beyond a reasonable doubt. *Smith v. State*, 986 So. 2d 290, 300 (Miss. 2008) (citing *Arizona v. Fulminante*, 499 U.S. 279, 296, 111 S. Ct. 1246, 1257, 113 L. Ed. 2d 302 (1991)).

¶26.    With regard to the charge of felonious fleeing the scene of an accident, the majority opinion asserts that the trial court's error in admitting James Henry's taped interview was harmless, given that the State's witness, Dermarcus Lott, testified that he had seen Corbin leaving the scene of the accident, and given that Lott's description of Corbin was corroborated by three other witnesses. In light of the testimony of these witnesses, the majority concludes Henry's recorded statement was "cumulative." Maj. Op. at ¶ 19.

¶27.    As for the taped interview of James Henry, the record indicates that, at trial, the tape became inaudible, and that a complete transcription of what was played before the jury could not be achieved. In the portion of the tape that was transcribed, Henry indicated that he had been driving Tammy Louis's vehicle when it was struck multiple times by a car driven by a man whom he identified only as Poo. Henry did not recall Corbin's having driven his vehicle alongside the Expedition, which Henry and Louis occupied, following the wreck. Henry stated

14

that he did not recall being transported to the hospital, and that he did not recall anything after the crash. However, the record then indicates that the tape containing the interview, which continued to play for the jury, became inaudible in "many portions." It is unclear from this notation in the record whether it was inaudible to the jury, or just to the court reporter. Therefore, there is no way to know whether the latter portion of the tape included a statement from Henry that Corbin had fled the scene of the accident. Because it is impossible to determine what the jury actually heard, there is no way to ascertain whether inadmissible evidence was adduced before the jury concerning Count III.

¶28. The testimony of the witnesses at or near the scene of the accident does not support a finding of harmless error. James House, who witnessed a man driving away from the accident in a gray car, was unable at trial to identify Corbin as the driver. He testified that he could merely describe the man he had seen that night. Samantha Davenport testified that, on the night of the accident, Corbin had flagged her down and asked her for a ride because his car had been stolen. Davenport's passenger, Johnny Haggard, also testified that Corbin had flagged them down, informed them his car had been stolen, asked for a ride, but then said he did not need a ride after all. Neither Davenport nor Haggard was present at the scene of the accident, and neither witnessed Corbin's fleeing the scene of an accident. Thus, the only witness among those enumerated by the majority who actually identified Corbin as the man fleeing the scene was Demarcus Lott.

¶29. For the above reasons, I cannot conclude that the inadmissible statements made by Henry were "merely cumulative of other overwhelming and largely uncontroverted evidence properly before the jury." *Brown,* 411 U.S. at 231. I believe that the State has failed to meet

15

its burden of showing beyond a reasonable doubt that the error was harmless with regard to Count III. *Smith*, 986 So. 2d at 300. Therefore, I am unable to join the majority in affirming the conviction of the charge laid in Count III of the indictment. I would reverse all three convictions and remand the case for a new trial.

**DICKINSON, P.J., CHANDLER AND KING, JJ., JOIN THIS OPINION.**