# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2011-CT-00941-SCT

*DARYL CONNER*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 07/01/2011 |
| TRIAL JUDGE: | HON. ROBERT P. CHAMBERLIN |
| TRIAL COURT ATTORNEYS: | DAVID CLAY VANDERBURG, ANGELA M. JONES, JENNIFER MUSSELWHITE |
| COURT FROM WHICH APPEALED: | DESOTO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: JUSTIN T. COOK |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | JOHN W. CHAMPION |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 05/15/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CHANDLER, JUSTICE, FOR THE COURT:**

¶1.     A jury found Daryl Conner guilty of burglary and felony fleeing a police officer, and the Circuit Court of DeSoto County sentenced him as a habitual offender to two consecutive life sentences. Conner appealed to the Court of Appeals, which affirmed his convictions and sentences. This Court granted Conner's petition for certiorari in which Conner argues that the evidence was insufficient to support his conviction for felony fleeing, that the trial court

erred by failing to instruct the jury on the elements of larceny, and that, because the pen packs establishing Conner's habitual-offender status were not admitted at the sentencing hearing, the trial court erred by sentencing him as a habitual offender.

¶2. We affirm the judgments of the Court of Appeals and the trial court. We find that the evidence was sufficient to support Conner's felony-fleeing conviction and that the jury was fully and fairly instructed. We further find that the pen packs establishing Conner's status as a habitual offender were admitted at the sentencing hearing. Therefore, we affirm Conner's convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

¶3. One morning, Mary Campbell entered her master bedroom to discover an unknown man in her home on Windersgate Drive in Olive Branch, Mississippi. The man fled from the home, entered a small, dark automobile parked in an adjacent driveway, backed his car down Windersgate Drive to Collinswood Road, and drove off. Once the car left her sight, Campbell entered her home and called 911.

¶4. The 911 dispatcher relayed the description of the dark vehicle to officers in the area. Within approximately one minute of the dispatch, Officer Matthew Kinne spotted a car matching Campbell's description of the car at the corner of Collinswood Road and Germantown Road. Officer Kinne initiated a pursuit of that vehicle, which ended when the vehicle crashed. Then, a foot pursuit ensued and officers arrested the driver.

¶5. Campbell later identified Daryl Conner from a photo lineup as the man in her home. The grand jury indicted Conner for burglary of a dwelling, felony fleeing, and petty larceny. Later, the trial court amended Conner's indictment to charge him as a habitual offender. The

2

jury convicted Conner of burglary of a dwelling and felony fleeing, and the trial court sentenced him as a habitual offender to serve two consecutive life sentences without the opportunity for parole.

## ANALYSIS

**I.      Whether the State presented sufficient evidence of Conner's identity to support his conviction for felony fleeing.**

¶6.      The Court of Appeals recognized that no witness had identified Conner as the person arrested following the pursuit. *Conner v. State*, No. 2011-KA-00941-COA, 2013 WL 1800065, *3 (Miss. Ct. App. April 30, 2013). But the Court of Appeals also found that:

> [t]he short passage of time from Campbell's report of a man in her home and the short distance from her home to the point where Officer Kinne spotted the similar vehicle and began the chase were sufficient evidence for the jury to infer that Conner was the individual who was driving the car and fled the arrest and whom Officer Kinne caught and arrested at the end of the chase.

*Id.* Conner argues that no reasonable juror could draw such an inference from the evidence presented at trial. Although we agree with the Court of Appeals' conclusion that the evidence was sufficient to support the felony-fleeing conviction, we do so for a different reason.

¶7.      On a challenge to the sufficiency of the evidence, this Court will reverse and render "if the facts and inferences point in favor of the defendant on any element of the offense with sufficient force that reasonable men could not have found beyond a reasonable doubt that the defendant was guilty . . . ." *Young v. State*, 119 So. 3d 309, 315 (Miss. 2013) (quoting *Hughes v. State*, 983 So. 2d 270, 275-76 (Miss. 2008)). Our "relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Young,* 119 So. 3d at 315. "This Court considers the evidence in the light most

3

favorable to the state." **Hughes**, 983 So. 2d at 276 (citing **Bush v. State**, 895 So. 2d 836, 843 (Miss. 2005)). "The state receives the benefit of all favorable inferences that may reasonably be drawn from the evidence." **Hughes**, 983 So. 2d at 276 (citing **Wilson v. State**, 936 So. 2d 357, 363 (Miss. 2006) (citing **Hawthorne v. State**, 835 So. 2d 14, 22 (Miss. 2003))). Likewise, the sufficiency of the evidence used to identify the accused "is primarily a question for the jury, provided the evidence could reasonably be held sufficient to comply with the requirement of proof beyond a reasonable doubt." **Passons v. State**, 239 Miss. 629, 634, 124 So. 2d 847, 848 (1960).

¶8.     The Court of Appeals primarily relied on the proximity between the location of the burglary and where Officer Kinne spotted a vehicle matching the description provided by Campbell. This circumstantial evidence turns on the fact that Campbell last saw Conner driving down Collinswood Road, which leads only to Germantown Road, and that Officer Kinne spotted the vehicle he pursued at the corner of Collinswood and Germantown Roads approximately one minute after he received the description from dispatch.

¶9.     But none of the evidence presented at trial established the distance Conner had to travel on Collinswood Road in order to reach Germantown Road. If that distance were, for example, 500 yards, then the jury's verdict based upon the timing of events established by the evidence would appear reasonable. But if that same distance were ten miles, the one-minute time frame would operate against the State, and the jury's decision would prove completely unreasonable, as no reasonable juror could infer that Conner could travel ten miles in one minute. Accordingly, in the absence of any evidence of the length of Collinsworth road, the Court of Appeals' reliance on proximity was misplaced.

4

¶10. That said, a reasonable juror could draw a chain of inferences through the evidence presented at trial to sufficiently identify Conner as the perpetrator of the felony fleeing. Campbell identified Conner at trial as the man she had seen in her home. She also testified that she provided a description to the 911 dispatcher of a tall black man fleeing in a dark car. Officer Kinne testified that he received a description of the car and suspect from dispatch and that, after receiving that description, he began looking for a black man in a dark sedan, wearing a dark shirt.

¶11. At trial, the prosecution entered into evidence a video from Officer Kinne's dashboard camera that revealed a black male, wearing a dark-colored shirt, fleeing from the dark sedan Officer Kinne pursued. A reasonable juror could conclude that the man running from the sedan was the same man described by Campbell to the dispatcher, and therefore the same man Campbell identified during trial. Accordingly, the State presented sufficient evidence to identify Conner as the perpetrator of the felony fleeing, and we affirm his conviction on that charge.

**II. Whether the trial court erred by failing to instruct the jury on the elements of larceny.**

¶12. Conner was convicted of burglary under Mississippi Code Section 97-17-23, which provides that "[e]very person who shall be convicted of breaking and entering the dwelling house or inner door of such dwelling house of another, whether armed with a deadly weapon or not, and whether there shall be at the time some human being in such dwelling house or not, with intent to commit some crime therein, shall be punished . . . ." Miss. Code Ann. §

97-17-23 (Rev. 2006). The trial court gave the following instruction on the elements of burglary:

> In Count I, Defendant Daryl Conner has been charged with the crime of Burglary of a Dwelling.
>
> If you find from the evidence in this case, beyond a reasonable doubt, that:
>
> 1)    On or about August 18, 2007, the Defendant Daryl Conner unlawfully broke and entered;
>
> 2)    The dwelling house of Billy and/or Mary Francis Campbell;
>
> 3)    With the intent to commit the crime of Larceny inside the building;
>
> then you shall find Defendant Daryl Conner guilt of Burglary of a Dwelling in Count 1.
>
> If the State has failed to prove any one of these elements beyond a reasonable doubt, then you shall find the Defendant not guilty in Count 1.

The trial court also instructed the jury that "[a]n inference of the intent to steal may arise from proof of the breaking and entering."

¶13.    Conner argues that the jury instructions were defective because the jury was not instructed on the elements of the intended crime of larceny. But he failed to request a larceny instruction at trial. Nonetheless, the issue is not procedurally barred. The trial court must "assure that the jury is 'fully and properly instructed on all issues of law relevant to the case.'" **Harrell v. State**, 134 So. 3d 266, 270 (Miss. 2014) (quoting **Kolberg v. State**, 829 So. 2d 29, 46 (Miss. 2002), *overruled on other grounds*. "There is no doubt that the trial court is ultimately responsible for rendering proper guidance to the jury via appropriately given

6

jury instructions, even sua sponte." ***Harrell***, 134 So. 3d at 270 (quoting ***Kolberg***, 829 So. 2d at 45).

¶14.    This Court reviews jury instructions "as a whole to determine whether the jury was fully and fairly instructed according to the applicable law." ***Clark v. State***, 40 So. 3d 531, 544 (Miss. 2010). We will not find error if the instructions fairly, though not perfectly, announce the applicable rules of law. ***Id.*** The crime of burglary requires the jury to find beyond a reasonable doubt that the defendant broke and entered the dwelling house of another with the intent to commit some crime therein. Miss. Code Ann. § 97-17-23(1) (Rev. 2006). This Court has held that jury instructions on burglary must identify the crime the defendant intended to commit. ***Daniels v. State***, 107 So. 3d 961, 964 (Miss. 2013).

¶15.    Conner's jury instructions complied with ***Daniels*** by identifying larceny as the crime he intended to commit. The jury was instructed to find Conner guilty of burglary if it concluded, beyond a reasonable doubt, that Conner unlawfully broke and entered the victim's dwelling house with the intent to commit the crime of larceny therein. The jury also was instructed that "[a]n inference of the intent to steal may arise from proof of the breaking and entering." *See* ***Gillum v. State***, 468 So. 2d 856, 861 (Miss. 1985) (holding that proof of breaking and entering raises a reasonable inference of an intent to steal).

¶16.    We find that, although the jury instructions did not list the elements of larceny, they fully and fairly informed the jury of the intent requirement for burglary. The elements of larceny are the taking and carrying away of another's personal property without consent and with felonious intent, that is, the intent to permanently deprive the owner of his property. ***Love v. State***, 208 So. 2d 755, 756 (Miss. 1968). The Court has described "felonious intent"

7

as "the intent to steal." ***Smith v. State***, 214 Miss. 453, 59 So. 2d 74 (1952). The jury instructions expressly stated that the "required intent" that the jurors had to find was "the intent to steal." And the general lay understanding of the term "larceny" is that it connotes stealing or theft. ***Commonwealth v. Lawrence***, 418 N.E. 2d 629, 631 (Mass. App. Ct. 1981). While the trial court should instruct the jury on the elements of the intended crime in a burglary trial, here, the jury instructions correctly instructed the jurors that they could find Conner guilty of burglary if they found he broke and entered the victim's dwelling with the intent to steal. We find that the jury instructions fairly, although not perfectly, instructed the jury on the applicable law; therefore, we affirm Conner's burglary conviction.

### III. Whether the trial court erred by sentencing Conner as a habitual offender.

¶17. Prior to trial, the State moved to amend Conner's indictment to charge him as a habitual offender under Mississippi Code Section 99-19-83, which provides for life imprisonment without parole or early release. Miss. Code Ann. § 99-19-83 (Rev. 2007). During a pretrial hearing on the State's motion, the State presented certified pen-pack records listing Conner's prior convictions and an affidavit from Candace Whisman, Director of Sentence Management Services for the Tennessee Department of Corrections, explaining that Conner had served the necessary separate sentences of more than one year. The trial court granted the State's motion and amended the indictment to add habitual-offender status.

¶18. At Conner's sentencing hearing, the State did not produce the pen packs and affidavit. Instead, the State asked the trial court to "refer back to the record that the Defendant has been amended as a 1983 habitual offender." The trial court asked if the defense had any objection

8

to the "convictions that have previously been submitted in a motion to amend hearing being incorporated into this sentencing hearing by reference." Conner did not lodge an objection to the incorporation by reference. He did object to the admission of the convictions on the grounds of hearsay and violation of his right of confrontation. The trial court overruled these objections. Conner then objected to habitual-offender sentencing as cruel and unusual punishment. The trial court found that the documents established Conner as a habitual offender under Section 99-19-83, rejected Conner's proportionality argument, and sentenced him to life imprisonment as a habitual offender. Conner then objected to being sentenced as a habitual offender on the ground that his habitual-offender status had not been proven beyond a reasonable doubt.

¶19.    Conner now argues that the State failed to meet its burden of proving his habitual-offender status because the pen-pack documents and affidavit (pen packs) were never introduced into evidence at the sentencing hearing. Conner's argument is procedurally barred because he never raised it before the trial court. *Clark v. State*, 40 So. 3d 531, 539 (Miss. 2010). However, this Court may employ plain-error review if "a defendant's substantive or fundamental rights are affected." *Grayer v. State*, 120 So. 3d 964, 969 (Miss. 2013). A defendant has a fundamental right of freedom from an illegal sentence. *Id.* Because Conner argues that the State failed to submit evidence proving his habitual-offender status at the sentencing hearing, the argument is reviewable as plain error. *Grayer*, 120 So. 3d at 969 (defendant's argument that the State failed to prove his habitual-offender status with competent evidence was reviewable as plain error). "To determine if plain error has occurred, this Court must determine 'if the trial court has deviated from a legal rule, whether that error

9

is plain, clear[,] or obvious, and whether that error has prejudiced the outcome of the trial.'" *Id.* (quoting *Lafayette v. State*, 90 So. 3d 1215, 1220 (Miss. 2012) (Carlson, P.J., specially concurring)).

¶20. When the defendant is indicted as a habitual offender, "[a] jury is to decide the question of guilt and subsequently the circuit judge is to serve as the finder of fact in determining whether the habitual offender part of the indictment is established by the requisite degree of proof." *Seely v. State*, 451 So. 2d 213, 215 (Miss. 1984). A sentencing hearing on a defendant's habitual-offender status must occur separately from the trial on the principal charge. URCCC 11.03. At this hearing, the elements in the applicable habitual-offender statute must be proven beyond a reasonable doubt. *Davis v. State*, 680 So. 2d 843, 851 (Miss. 1996). We have held that pen-pack records may constitute competent evidence. *Taylor v. State*, 122 So. 3d 707, 709, 711 (Miss. 2013). The defendant must be afforded a reasonable opportunity to challenge the State's proof. *Keyes v. State*, 549 So. 2d 949, 951 (Miss. 1989).

¶21. "[T]he state has the same burden of proof as to the habitual offender portion of the indictment as it has on the principal charge." *Young v. State*, 507 So. 2d 48, 50 (Miss. 1987). The defendant has the same rights at the habitual-offender sentencing hearing as at trial. *Id.* In *Young v. State*, we observed that "there appears to be some tendency to routinely allow the state to produce some documentation of prior offenses and for the trial court to perfunctorily find the defendant an habitual offender, then routinely pass out the sentence mandated. . . ." *Id.* The Court emphasized that "a bifurcated trial means a full two-phase trial

10

prior to any finding that the defendant is an habitual offender and subject to enhanced punishment." *Id.*

¶22. The Court in *Young* reversed and rendered Young's habitual-offender sentencing enhancement due to deficiencies in the sentencing hearing. *Id.* at 50. At the sentencing hearing, the State introduced documents showing Young was a habitual offender. *Id.* at 49. Young objected to their admission on the ground that no foundation had been laid. *Id.* The prosecutor referred the trial court to Young's trial testimony, in which he had admitted the convictions. *Id.* at 50. The trial judge overruled Young's objection based on his testimony from the trial. *Id.* This Court held that the trial court had erred by relying on trial testimony that had not been introduced at the sentencing hearing. *Id.* The Court stated that "the language employed by [the prosecutor] cannot be stretched so as to be considered a reintroduction of the evidence. On the contrary, it seems simply an invitation to the trial judge to rely on that evidence without having it reintroduced, which he subsequently did." *Id.*

¶23. In *Grayer v. State*, 120 So. 3d 964 (Miss. 2013), this Court also found a habitual-offender sentence to have been based on insufficient evidence. After the State recited Grayer's prior felony convictions and referred the trial court to the indictment, the trial court found Grayer to be a habitual offender. *Grayer*, 120 So. 3d at 967. The State never put certified copies of the prior convictions into evidence. *Id.* at 969. This Court held that, because the State had produced no evidence at the sentencing hearing to support Grayer's habitual-offender status, the State had failed to prove beyond a reasonable doubt that Grayer

11

was a habitual offender, and the trial court had erred by sentencing him as a habitual offender. *Id.*

¶24.    Conner argues that the pen packs were not introduced into evidence at his sentencing hearing; therefore, the State failed to prove his habitual-offender status beyond a reasonable doubt.  We disagree. The trial court expressly incorporated the pen packs into the record of the sentencing hearing and gave Conner an opportunity to object; Conner made no objection to the incorporation of the pen packs by reference. The trial court rejected Conner's arguments against the admission of the pen packs, and then the court considered the pen packs before finding Conner to be a habitual offender. It is manifest from the trial court's statements on the record that the trial court actually reviewed the pen packs at the sentencing hearing. The facts show that, while there was some irregularity in the manner in which the pen packs were introduced into evidence, they were, in fact, introduced into evidence. We note that the pen packs are part of the appellate record.

¶25.    We observe that the incorporation of pen packs introduced at a prior proceeding "by reference" at a sentencing hearing is not the preferred method of introduction. *See* Stanford Young, *Miss. Trial Handbook for Lawyers* §22:2 (3d ed. 2013) (stating that "an attorney seeking to admit a document into evidence should identify it and have the reporter mark it for record identification"). The record of a sentencing hearing should clearly and unambiguously reflect the admission of habitual-offender evidence. This saves the appellate court from the task of combing the record to ascertain whether the State's proof actually was admitted at the sentencing hearing. But here, unlike in *Young* and *Grayer*, the State's

12

evidence supporting Conner's status as a habitual offender was admitted at the sentencing hearing. Therefore, no error occurred, and this issue is without merit.

¶26. Finally, we address Justice Kitchens's argument that Conner's Sixth Amendment right of confrontation was violated by the admission of Whisman's affidavit. We have not held that Confrontation-Clause guarantees exist during sentencing, even if sentencing occurs under our habitual-offender statutes. *Holland v. State*, 705 So. 2d 307, 328 (Miss. 1997); *but see Pitchford v. State*, 45 So. 3d 216, 252 (Miss. 2010) (applying the Confrontation Clause to jury sentencing). The Supreme Court of the United States has held that the Confrontation Clause does not apply during the sentencing process. *Williams v. Oklahoma*, 358 U.S. 576, 583-84, 79 S. Ct. 421, 3 L. Ed. 2d 516 (1959); *Williams v. New York*, 337 U.S. 241, 246-251, 69 S. Ct. 1079, 93 L. Ed. 1337 (1949). Post-*Crawford*, the federal circuit courts continue to apply *Williams* and do not recognize a right to confrontation during sentencing proceedings. *Crawford v. Washington*, 541 U.S. 36, 51, 124 S. Ct. 1354, 1364, 158 L. Ed. 2d 177 (2004); *see, e.g.,United States v. Beydoun*, 469 F.3d 102, 108 (5th Cir. 2006). In light of the fact that this Court has not determined that the Confrontation Clause applies to sentencing proceedings, and Conner does not raise this issue on appeal, we decline to find that the admission of Whisman's affidavit was plain error. We affirm the judgments of the Court of Appeals and the DeSoto County Circuit Court.

¶27. **COUNT I: CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AS AN HABITUAL OFFENDER, WITHOUT THE ELIGIBILITY FOR PAROLE, AFFIRMED. COUNT III: CONVICTION OF FELONY FLEEING AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCES SHALL RUN CONSECUTIVELY TO ANY SENTENCE CURRENTLY BEING**

13

SERVED.  APPELLANT SHALL PAY COURT COSTS AND A FINE OF $1,000.00 WITH CONDITIONS AND SHALL BE GIVEN CREDIT FOR 349 DAYS FOR TIME SERVED.

WALLER, C.J., RANDOLPH, P.J., LAMAR, PIERCE AND COLEMAN, JJ., CONCUR. DICKINSON, P.J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED IN PART BY KITCHENS AND KING, JJ., KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY KING, J.

DICKINSON, PRESIDING JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶28.    I fully join the majority's decision to affirm Conner's conviction for felony fleeing and his sentence as a habitual offender on that charge.  But, because the trial court failed to instruct the jury adequately on Conner's burglary charge, I would reverse that conviction.

¶29.    The trial judge instructed the jury that, in order to convict Conner of burglary, it must find beyond a reasonable doubt that he intended to commit a larceny in Campbell's home. But, because the trial judge did not instruct the jury on the legal requirements for a larceny, Conner now argues that the jury could not determine whether he possessed the requisite intent to commit larceny.

¶30.    Neither the State nor Conner requested a larceny instruction at trial.  In most cases, a litigant who fails to request a certain jury instruction waives the issue for appeal.[1] However, we have made it clear that the trial judge had the ultimate duty to provide the jury with proper instructions.  And a jury that has not been properly instructed on the elements of a crime is inherently unable to render a verdict based on those elements.  It follows that,

---

[1] *Ballenger v. State*, 667 So. 2d 1242, 1252 (Miss. 1995).

in such cases, the defendant's fundamental right to due process of law and a fair trial have been compromised, and we may grant relief under the plain-error doctrine.[2]

¶31. Conviction for burglary of a dwelling requires the jury to find beyond a reasonable doubt that the defendant broke and entered the dwelling of another with the intent to commit "some crime" therein.[3] But, unless the prosecution informs the jury of the specific crime the State alleges the defendant intended to commit, the indictment is "fatally flawed."[4]

¶32. Indeed, the trial court must instruct the jury on the specific crime the State contends the defendant intended to commit because "[t]he failure to instruct the jury on some specific crime in the second element of burglary would have allowed each of the jurors to arbitrarily select some crime of which there was no proof, and use that nonexistent offense to convict [the defendant] of burglary."[5]

¶33. Here, the trial judge instructed the jury that, in order to find Conners guilty of burglary, it must have found that he intended to commit "larceny." But the jury was left to guess what it means to commit a larceny. While the prosecutor was not required to prove the elements of larceny – indeed, the State could never prove the elements of larceny where the

---

[2]*Flora v. State*, 925 So. 2d 797, 811 (Miss. 2006) (quoting *Williams v. State*, 794 So. 2d 181, 187 (Miss. 2001), *overruled on other grounds by Brown v. State*, 995 So. 2d 698 (Miss. 2008), (citing *Gray v. State*, 549 So. 2d 1316, 1321 (Miss. 1989)); *Bolton v. State*, 113 So. 3d 542, 544 (Miss. 2013) (quoting *Rogers v. State*, 95 So. 3d 623, 632 (Miss. 2012)).

[3]Miss. Code Ann. § 97-17-23(1) (Rev. 2006).

[4]*Lambert v. State*, 462 So. 2d 308, 311 (Miss. 1984) (citing *Newburn v. State*, 205 So. 2d 260 (Miss. 1967); *State v. Buchanan*, 75 Miss. 349, 22 So. 875 (1898)).

[5]*Daniels v. State*, 107 So. 3d 961, 964 (Miss. 2013).

defendant broke and entered in an unsuccessful attempt to commit a larceny – it failed to consider the jury's need to know those elements in order to analyze whether the defendant *intended* to commit them.

¶34. Larceny is "the taking and carrying away from any place, at any time, of the personal property of another, without his consent, by a person not entitled to the possession thereof, feloniously, with intent to deprive the owner of his property permanently, and to convert it to the use of the taker or of some person other than the owner."[6]

¶35. It is not an answer to say that jurors understand what is a larceny. I find it highly unlikely that all members of a jury consisting predominantly of lay persons – not attorneys and judges – would know the requirements for a larceny. But, even if some of the jurors claimed to know the requirements for a larceny, they are specifically instructed not to consider their own views of what the law requires and to apply only the law given to them by the trial judge.

¶36. So, when a trial judge requires the jury to determine whether the defendant intended to commit larceny, that judge may not leave the jury to speculate as to the meaning of larceny. This is not to say that all jurors are completely ignorant of the law – they are not. But, because jurors are forbidden from applying their own knowledge of the law, they must be informed by the trial judge of the law to be applied.

¶37. By failing to instruct on the elements of larceny, the trial judge left the jurors to assign their own meaning to that word. This eliminated their ability to determine whether the

---

[6]*Mapp v. State*, 248 Miss. 898, 904, 162 So. 2d 642, 645 (1964) (quoting 52 C.J.S. *Larceny* § 1, p. 779; *Jackson v. State*, 211 Miss. 828, 52 So. 2d 914 (Miss. 1951)).

16

defendant intended to commit that crime beyond a reasonable doubt. And this failure was not remedied because the trial judge instructed that the jury might infer an intent to steal from the act of breaking and entering. The intent to steal, standing alone, is not larceny. One must intend to *permanently* deprive the other of his or her property. And, even if stealing and larceny were synonymous, the trial judge never instructed the jury to find the intent to steal beyond a reasonable doubt, nor did he explain that he intended the instruction on the intent to steal to define or explain the meaning of larceny. He merely instructed the jury that the intent to steal might be inferred from the circumstances of breaking and entering.

¶38.    The instructions left the jury to speculate as to the meaning of a legal term, eviscerating the jury's ability to consider Conner's guilt. Accordingly, I would reverse Conner's conviction for burglary of a dwelling and remand for a new trial on that charge.

**KITCHENS AND KING, JJ., JOIN THIS OPINION IN PART.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶39.    There can be no doubt that prosecutions under Mississippi's habitual-offender statutes must occur in bifurcated trials. ***Seely v. State***, 451 So. 2d 213, 214 (Miss. 1984). At the sentencing *trial*, "the circuit judge is to serve as the finder of fact in determining whether the habitual offender part of the indictment is established by the requisite degree of proof[,]" that is, beyond a reasonable doubt. ***Id.*** at 215. After reviewing the transcript of the pretrial hearing on the motion to amend the indictment as well as the sentencing hearing, I am convinced that the State failed to prove the allegations of habitual-offender status in Conner's indictment beyond a reasonable doubt, and Conner was denied his right to confront a witness

17

against him in the process. Because the State failed in its proof, and Conner's constitutional right to confrontation was violated, I must respectfully dissent in part. I would vacate his sentences and remand for resentencing as a nonhabitual offender. I also join the part of Justice Dickinson's opinion arguing for the reversal of Conner's burglary conviction. With the majority, the only point upon which we agree is that Conner's conviction of felony fleeing should be affirmed.

¶40. Conner's amended indictment alleges that he has five prior convictions: two for robbery with a deadly weapon, and three for robbery. The indictment alleges that he was sentenced to and served more than one year on each of those prior charges.[7] The motion to amend the indictment was accompanied by pen packs from the State of Tennessee Department of Corrections and an affidavit from Candace Whisman, a corrections official, outlining her interpretation of Conner's sentences and prison time. The trial court amended the indictment based upon the State's representation that, at sentencing, it would be able to prove beyond a reasonable doubt that Conner had served more than a year on two prior convictions, at least one of which was a violent crime. In other words, the trial court's acceptance of the pen packs and affidavit for the purpose of amending the indictment opened the door for the State to undertake the task of proving Conner's habitual-offender status. By

---

[7] Mississippi Code Section 99-19-83 requires proof of only two prior convictions for which the defendant was sentenced to and served more than one year. However, the State apparently wanted to make it abundantly clear that Conner had five prior convictions that could meet the standard for a life sentence as an habitual offender. *See* Miss. Code Ann. § 99-19-83 (Rev. 2007).

18

no means did the trial court's ruling mean that the State also had crossed the threshold of reasonable doubt necessary for it to sentence Conner as an habitual offender.

¶41.    Both at the pretrial hearing and at sentencing, Conner objected to the admission of the pen pack and explanatory affidavit because it violated his right to confront the witnesses against him. Additionally, at the sentencing hearing, he argued that the State had failed to meet its burden of proof in showing that he should be sentenced as an habitual offender. Because I find that the issues are interrelated, I will address them together.

¶42.    It is undisputed that Conner has an extensive criminal history. At the age of forty-nine, he has amassed an impressive rap sheet. However, the scope and depth of Conner's criminal past in no wise relieves the State of proving beyond a reasonable doubt, in a separate trial, that Conner has twice been convicted of crimes for which he was sentenced to and served more than one year, one of those being a violent crime.[8] Miss. Code Ann. § 99-19-83 (Rev. 2007). The prosecution set out to make such proof by means of the extensive pen-pack records outlining Conner's criminal history, as well as Whisman's accompanying affidavit providing her interpretation of those records' meaning. The State attempted to place the pen packs and affidavit into evidence by asking the court to incorporate them into the record through reference to the pretrial hearing on the motion to amend the indictment. At that point,

---

[8]The State could have greatly eased its requirement of proof by charging Conner under Section 99-19-81. That section requires that the State show only that Conner was sentenced to a year on two separate crimes. For such proof, just the judgment of conviction and sentence would have been enough. At Conner's age, he likely would have served out the remainder of his life under that sentence. *See* Miss. Code Ann. § 99-19-81 (Rev. 2007).

19

the trial court determined that the State had met its burden, and that Conner should be sentenced as an habitual offender.

¶43.    After reviewing the transcript of the sentencing hearing, I cannot see how the trial court was able to determine beyond a reasonable doubt that Conner was an habitual offender under Section 99-19-83 based upon the pen pack itself. The pen pack covers multiple felony convictions, misdemeanor convictions, and parole releases and revocations over a twenty-year period. It is extensive. In the record on appeal, it is not in chronological order. After studying the pen pack, it is not clear to me how much time Conner served for a number of the felonies for which he was convicted. The only way to reach a conclusion as quickly as the trial court did, without an extensive knowledge of the Tennessee Department of Corrections's administrative regulations, would be to rely totally upon the affidavit provided by Whisman.

¶44.    When the court asked Conner whether he objected to incorporating the pen pack and affidavit into evidence, he argued that the documents were inadmissible hearsay and that they violated his right to confront the witnesses against him.[9] The judge overruled those objections. He then conducted a brief examination of Conner's prior convictions and sentences.

---

[9]Conner did not raise the confrontation clause issue on appeal. However, he did object on that basis at the sentencing trial. "Under the doctrine of plain error, we can recognize obvious error which was not properly raised by the defendant on appeal, and which affects a defendant's fundamental, substantive right." **Corbin v. State**, 74 So. 3d 333, 337 (¶ 11) (Miss. 2011) (quoting **Smith v. State**, 986 So. 2d 290, 294 (Miss. 2008) (internal quotations omitted)).

Court: First and foremost, I'll note that the documents before the Court do establish Mr. Conner as a Section 99-19-83 habitual offender and he will be sentenced as such.

I'm looking at Mr. Conner. Here's a conviction for a robbery with a deadly weapon, appears to be a second conviction, appears to be contemporaneously, but a second conviction for robbery with a deadly weapon. The third, apparently contemporaneous, robbery conviction. Appears to be a repeat of that same conviction, the next one. And another non-contemporaneous later in time, robbery conviction.

¶45. At no point did the court specifically find that Conner had served a year or more on any of those listed prior convictions, nor did it indicate which prior convictions alleged in the indictment specifically were being used to enhance Conner's sentence or for which ones the State had met its burden of proof. It is obvious to me, after having reviewed the extensive pen packs, that the only way to make real sense out of Conner's conviction and sentencing history is through the affidavit from Whisman. This constituted the real proof against Conner in adjudicating him an habitual offender. Her absence from Conner's sentencing hearing deprived him of the fundamental right to confront the witnesses against him, and his sentence as an habitual offender should be reversed.

¶46. "[T]he admission of a testimonial statement of a witness who does not appear at trial *is barred*, unless that witness is unavailable, and the defendant has had a prior opportunity for cross-examination." ***Corbin v. State***, 74 So. 3d 333, 338 (¶ 13) (Miss. 2011) (emphasis added). "[A] statement is testimonial when it is given to the police or individuals working in connection with the police for the purpose of prosecuting the accused." ***Hobgood v. State***, 926 So. 2d 847, 852 (¶ 11) (Miss. 2006). The United States Supreme Court has stated that testimonial statements can be "ex parte in-court testimony . . . material *such as affidavits*, .

21

. . [or] statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." ***Crawford v. Washington***, 541 U.S. 36, 51-52, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (emphasis added) (internal quotations omitted). Whisman's affidavit, explaining the complicated and extensive pen pack detailing Conner's sentencing history, was unequivocally testimonial. It explained the meaning of the attached pen-pack documents and was used to remove any doubt as to Conner's prior sentences and their length. Whether Whisman's interpretation of the pen-pack materials is right or wrong, it is, nevertheless her interpretation. Conner had a state and federal constitutional right to cross examine her. *See* U.S. Const. amend. VI; Miss. Const. art. 3, § 26.

¶47.    The State had a burden to prove its case at the sentencing hearing. It provided the certified pen-pack documents, which the majority correctly recognized as competent evidence. *See **Taylor v. State***, 122 So. 3d 707, 709, 711 (¶ 11) (Miss. 2013). However, as clearly recognized by the State, the documents are difficult to interpret without the knowledge of someone well versed in the administrative procedures of the Tennessee Department of Corrections. Whisman interpreted the documents in the pen pack and stated her conclusions regarding Conner's prior convictions and sentences. It was incumbent upon the State to produce Whisman as a witness to ensure that she could explain her reasoning for her conclusions, and it was incumbent upon the State to provide Conner the opportunity to cross-examine her and challenge the validity of her conclusions. At the sentencing hearing, the State argued that Conner should have subpoenaed Whisman if he wished to cross-examine her. This is incorrect. The burden is on the State to prove the defendant qualifies for

22

habitual-offender status; it is not on the defendant to prove that he does not. Whisman was necessary to prove the State's case, and the State had the burden to ensure her appearance at the sentencing hearing. Whisman's affidavit was the State's strongest and clearest proof that Conner was an habitual offender beyond a reasonable doubt. Such a testimonial statement is *barred* from admission into evidence when its author does not appear at trial. *Corbin*, 74 So. 3d at 338. As Whisman did not appear at trial, her affidavit should have been denied admission into evidence. The trial court's failure to do so was reversible error.

¶48.    As for the majority's contention that this Court has never held that confrontation rights exist at sentencing, I must disagree. This Court unequivocally has held that those rights exist at the sentencing stage of a bifurcated trial.

> A jury is to decide the question of guilt and subsequently the circuit judge is to serve as the finder of fact in determining whether the habitual offender part of the indictment is established by the requisite degree of proof. The state has the same burden of proof as to the habitual offender portion of the indictment as it has on the principal charge. ***The defendant also has the same rights at both stages of trial.***

*Seely*, 451 So. 2d at 215 (Miss. 1984) (emphasis added). Clearly, in a proceeding against an alleged habitual offender in Mississippi, the accused's right to confront the witnesses against him exists at the guilt phase of his bifurcated trial, and that *same right* exists at sentencing.

¶49.    This Court long ago recognized that, in cases in which the State seeks to punish a defendant as an habitual offender, "[t]here appears to be some tendency to routinely allow the state to produce some documentation of prior offenses and for the trial court to perfunctorily find the defendant an habitual offender. . . ." *Id.* The Court recognized that the *only* way to adjudicate habitual-offender status was to hold "a full two-phase trial prior to

23

any finding that a defendant is an habitual offender and subject to enhanced punishment."

*Id.* Here, the trial court perfunctorily examined an extensive and confusing record of Conner's criminal history and relied on an inadmissible, testimonial affidavit to conclude that Conner qualified for habitual-offender status. Conner's right to confrontation was violated, and he was summarily adjudicated an habitual offender in a hearing resembling a trial in only the loosest terms, as far as its recognition of the rules of evidence and the constitutional rights of a criminal defendant are concerned. Without Whisman's affidavit in evidence, the State did not remove all reasonable doubt from its allegations that Conner was an habitual offender. Accordingly, I would hold that Conner's sentence as an habitual offender should be reversed, and his case should be remanded for resentencing as a nonhabitual offender.

**KING, J., JOINS THIS OPINION.**